605 A.2d 472

The GENERAL CRUSHED STONE COMPANY, Appellant,

v.

CAERNARVON TOWNSHIP, Appellee.

Commonwealth Court of Pennsylvania.

Argued Dec. 19, 1991.

Decided March 12, 1992.

Ethan Halberstadt, for appellant.

Elizabeth A. Hambrick–Stowe, for appellee.

Before CRAIG, President Judge, McGINLEY, J., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

The General Crushed Stone Company (General) appeals a decision of the Court of Common Pleas of Lancaster County (trial court) wherein the trial court granted Caernarvon Township's (Township's) preliminary objections (POs) and dismissed General's complaint with prejudice. We affirm.

The background of this case is as follows. On February 25, 1991, the Township solicited competitive bids on a con-

tract for work on five township roads. Sixty percent of the financing for the project was to come from the Commonwealth's Motor License Fund[1] and the Township was to supply the balance and any additional costs from its general revenue fund.

Even though General[2] submitted a complete, timely and lowest dollar amount bid on February 25, 1991, the Township awarded the contract to another bidder.[3] As a result, on March 15, 1991, General filed a petition for a preliminary injunction and a petition for a permanent injunction. Therein, General sought to restrain the Township from awarding the contract to anyone other than the lowest responsible bidder and alleged that the Township had failed to comply with applicable competitive bidding laws.

In response, the Township filed POs[4] to those petitions on March 28, 1991, wherein it alleged that General was not a taxpayer, but instead only a disappointed bidder, and thus

1. Under Section 3 of the Act of June 1, 1956, P.L. (1955) 1944, *as amended,* 72 P.S. § 2615.3, the General Assembly appropriates a certain percentage of liquid fuel and fuel use taxes to municipalities for the maintenance, repair, construction and reconstruction of roads, streets and related items based on factors such as the total number of miles of public roads and streets maintained by a municipality and the municipality's population.

2. The Pennsylvania Department of Transportation pre-qualified General to perform contracts such as the one at issue for both the Department and municipalities.

3. The trial court noted that the Township had awarded another contract in 1990 to General as the lowest responsible bidder. The Township, however, had problems with that project, including signage and traffic control. The Township blamed General for these problems and exercised its discretion in awarding the contract at issue here to the second lowest bidder.

4. General contends that the trial court should have dismissed the Township's POs challenging General's standing because only lack of capacity to sue is properly the subject of POs according to Pa.R.C.P. No. 1017(b)(5). We acknowledge that only lack of capacity to sue, and not lack of standing, is specifically included in Rule 1017(b)(5). However, we note that in the original jurisdiction case of *Township of Upper Moreland v. Pennsylvania Department of Transportation,* 48 Pa.Commonwealth Ct. 27, 409 A.2d 118 (1979), we considered and then granted the Department's POs challenging the township's standing as a fiduciary of the public interest allegedly in a position to prevent unlawful government spending.

lacked standing to sue. The trial court agreed, finding that General's payment of liquid fuel taxes to the Commonwealth was insufficient to establish standing and that, if General was granted standing to sue on that basis alone, then every citizen in the Commonwealth who purchased gasoline and, consequently, paid liquid fuel use taxes, would have standing to sue with respect to the use of municipal funds anywhere in the state that included those taxes. The trial court concluded that, if the contract was funded by liquid fuel taxes alone, then General would have standing. However, since the contract was also funded from the Township's general revenue fund, and any additional expenses related to the five township roads would have to come from that fund, then General would have standing only if it was a Township taxpayer whose funds were at stake.

There are two issues here. The first issue is whether the trial court erred in determining that General was not a taxpayer with standing to challenge the award of the Township's contract. The second issue is whether the trial court erred in declining to address the substantive issue of whether General complied with all of the applicable competitive bidding laws.

It is well established that only a taxpayer has standing to seek to enjoin the award of a public contract to anyone other than the lowest responsible bidder. *J.P. Mascaro & Sons, Inc. v. Township of Bristol,* 95 Pa.Commonwealth Ct. 376, 505 A.2d 1071 (1986). Significantly, a taxpayer who is also a disappointed bidder may still challenge a public contract award. *Lasday v. Allegheny County,* 499 Pa. 434, 453 A.2d 949 (1982).

General does not contend that it is a Township taxpayer, but instead, argues that it is a taxpayer with standing due to its payment of the liquid fuels tax, which comprises funding for sixty percent of the project. In order to have standing, however, General had to plead facts which established a substantial, direct and immediate injury. *Par-*

*atransit Association of Delaware Valley, Inc. v. Yerusalim,* 114 Pa.Commonwealth Ct. 279, 538 A.2d 651 (1988). A taxpayer's substantial, direct and immediate interest or injury must surpass the common interest or injury of all taxpaying citizens in not having their taxes expended in a wasteful manner.[5]  *Consumer Party v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986). For the following reasons, we conclude that General did not have a greater interest or injury than any other taxpayer with regard to the contract at issue.

According to the formula found in Section 4 of the Act, 72 P.S. § 2615.4,[6] only a set amount from the Motor License Fund is allocated to each municipality. Here, only a finite amount of the Township's share of the Motor License Fund, sixty percent of the cost of the project, is to be expended; the Township's taxpayers, via the general revenue fund, must pay the balance and any additional, unforeseen costs of the project. General's payment of the liquid fuel taxes, in and of itself, is simply not enough to satisfy the requirement that General's interest be distinct from that of an

---

**5.** In *Application of Biester,* 487 Pa. 438, 409 A.2d 848 (1979), our Supreme Court carved out specific and narrow exceptions to the general rule requiring that the degree of causal connection between the governmental activity and the taxpayer's interest be substantial. However, General has not established the five criteria necessary for an exception: governmental action would otherwise go unchallenged; those most directly affected by the expenditure would benefit and thus, be disinclined to challenge it; judicial relief is appropriate; alternative remedies are unavailable; and no one else is better suited to challenge the governmental action. Thus, General is required to demonstrate an injury distinct from that of an ordinary taxpayer.

**6.** The funds are to be allocated to the municipalities as per the following formula:

(5/10 of this allocation divided by the total miles of public roads and streets which are maintained by municipalities × the number of miles in the particular municipality)

+

(5/10 of this allocation divided by the total official population of the municipalities as of January 1 of the year in which the money is to be paid to the municipalities × the official population of the particular municipality as of January 1 of said year)

=

Amount due to particular municipality

ordinary taxpayer. Everyone who buys gasoline pays liquid fuel taxes and thus, contributes to the Motor License Fund.[7] Thus, General has only the "abstract interest of all citizens"[8] that their taxes not be expended in a wasteful manner.

As further support for the trial court's conclusion that General lacked standing to challenge the award of the Township contract, we note that in the analogous disappointed bidder case of *Mascaro*, wherein the contractor appealed the order of the Court of Common Pleas of Bucks County sustaining Bristol Township's POs in the nature of a demurrer challenging *Mascaro's* standing, we affirmed the trial court's order because the contractor did not pay taxes to the municipality who awarded the contract.[9] We held that the contractor's payment of taxes in Montgomery County was insufficient to merit standing to challenge the award of a public contract apparently funded, at least in part, by Bucks County taxes. Although the source of the funding for the contract at issue in *Mascaro* was unclear, we unambiguously concluded that "Mascaro has *no standing as a taxpayer* to challenge Bristol Township's (Bucks County) contract award." *Mascaro*, 95 Pa.Commonwealth Ct. at 380 n. 3, 505 A.2d at 1074 n. 3 (emphasis added).

Like the contractor in *Mascaro*, General did not pay taxes in the municipality awarding the contract and averred in its complaint that it was a Pennsylvania corporation. Even though the funding of the contract at issue in *Mascaro* was unclear, our court concluded that *Mascaro* had to pay taxes

7. Section 5.1 of the Fuel Use Tax Act, Act of January 14, 1952, P.L. (1951) 1965, added by Section 1 of the Act of February 5, 1982, P.L. 6, 72 P.S. § 2614.5a.

8. *William Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 195, 346 A.2d 269, 282 (1975).

9. We note that in an earlier case also involving J.P. Mascaro and Sons, Inc. as a disappointed bidder, *Adler v. Township of Bristol*, 83 Pa.Commonwealth Ct. 72, 475 A.2d 1361 (1984), the Adlers, citizens and taxpayers of Bristol Township, and the contractor sought to have the Court of Common Pleas of Bucks County restrain that township from signing a contract with another bidder. Significantly, standing was not at issue, presumably due to the inclusion of the Adlers in the suit.

in Bucks County in order to have taxpayer standing. Thus, it is logical to assume that Bucks County taxpayers were funding that contract in whole or in large part since the primary reason for according taxpayers standing is to protect those who demonstrate a substantial, direct and immediate interest in the expenditure of their taxes. *Consumer Party.* We find *Mascaro* to be analogous to the case *sub judice* because *Mascaro* stands for the proposition that a taxpayer whose funds are not at stake has no standing.

Accordingly, we affirm the trial court's order granting the Township's POs and dismissing General's complaint with prejudice. Thus, we need not reach the second issue; if General has no standing, then there was no need for the trial court to address the substantive merits of its complaint.

## ORDER

AND NOW, this 12th day of March, 1992, the order of the Court of Common Pleas of Lancaster County granting Caernarvon Township's preliminary objections and dismissing The General Crushed Stone Company's complaint with prejudice is hereby affirmed.