611 A.2d 1332

JAMES T. O'HARA, INC., Appellant,

v.

BOROUGH OF MOOSIC, Appellee.

Commonwealth Court of Pennsylvania.

Submitted April 9, 1992.

Filed June 18, 1992.

Paul J. Walker, for appellant.

John J. Brazil, Jr., for appellee.

Before COLINS and FRIEDMAN, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

James O'Hara, Inc. (O'Hara), a disappointed bidder for the Borough of Moosic's sewer construction contract, appeals from an order of the Court of Common Pleas of Lackawanna County denying its petition for a preliminary injunction. By requesting this injunction, O'Hara sought to restrain the Borough from awarding the contract to either Michael F. Ronca & Sons, Inc. (Ronca) or Poppel, Inc., both of which submitted lower bids than O'Hara. The trial court held that O'Hara lacked standing to maintain this action. We affirm.

Approximately four or five years ago, the Pennsylvania Department of Environmental Resources (DER) issued a moratorium on building permits within the Borough of Moosic, to be lifted only after the Borough undertook specific actions to improve and increase its sewer facilities. As part of a major sewer project, the final action in compliance with the DER order, the Borough solicited bids for the installation of a sanitary sewer line. In addition to the Borough's financial contribution, the project was partially funded by a loan from the Pennsylvania Infrastructure Investment Authority, or PennVest. Repayment of this loan was to be accomplished through a sewer rate ordinance paid by Borough residents. The Borough received thirteen bids, of which O'Hara's was

third lowest.[1] The Borough Engineer, who also prepared the specifications for the project, investigated the bids. He recommended that the contract be awarded to Ronca, the lowest bidder. The Borough Solicitor approved the recommendation, and the Borough Council awarded the contract accordingly.

Thereafter, O'Hara filed a complaint in equity and a petition for preliminary injunction, requesting the trial court to disqualify the bids of Ronca and Poppel for allegedly failing to comply with bidding requirements.[2] Consequently, as third lowest bidder, O'Hara contended that the contract award should have gone to its company. However, relying on our decision in *J.P. Mascaro & Sons, Inc. v. Bristol Township*, 95 Pa.Commonwealth Ct. 376, 505 A.2d 1071 (1986), the trial court held that because O'Hara was not a Borough taxpayer, it lacked the requisite standing to sue to enjoin the Borough's contract award, and so denied O'Hara's request for a preliminary injunction. O'Hara appeals.

Initially, we recognize our limited scope of review from a decree denying a preliminary injunction. In *Lutz Appellate Printers, Inc. v. Department of Property and Supplies*, 472 Pa. 28, 33, 370 A.2d 1210, 1212–1213 (1977), our Supreme Court stated:

> It has long been the rule in this Court that on appeal from a decree, whether granting or denying a preliminary injunction, we will not inquire into the merits of the controversy, but will, instead, examine the record only to determine if there were any apparently reasonable grounds for the action of the court below.

In determining whether circumstances here furnish O'Hara with standing, as a Pennsylvania taxpayer, to challenge the

1. Ronca submitted the lowest bid on the project, which was approximately $140,000.00 less than O'Hara's estimate. Poppel, Inc. was the second lowest bidder.

2. O'Hara alleges that Ronca's bid was defective because it was submitted with a form surety guarantee which contained a bond signed by an individual unauthorized to guarantee the bid. O'Hara also contends that Poppel's bid was unacceptable because the amount of its alternate bid, when compared to other bids, obviously was incorrect.

award of the state-subsidized Borough contract, we remain cognizant of our restricted role.

In Pennsylvania, a disappointed bidder has suffered no injury entitling him to redress in court. *Mascaro.* However, a taxpayer's standing to enjoin the improper award of a public contract is not defeated merely because the complaining taxpayer is also a disappointed bidder. *American Totalisator Co., Inc. v. Seligman,* 489 Pa. 568, 414 A.2d 1037 (1980); *Lutz.* O'Hara acknowledges that it has no standing to sue merely as a disappointed bidder; O'Hara also concedes that it is not a resident or taxpayer of the Borough of Moosic. Nevertheless, O'Hara argues that it retains a pecuniary interest, as a Pennsylvania taxpayer, in the award of a Borough contract subsidized by Commonwealth loans, and so has standing to sue to enjoin the contract where it was awarded unlawfully.

In response, the Borough argues that, although representing itself as an interested taxpayer, O'Hara is nothing more than a disappointed bidder. The Borough contends that O'Hara did not bring this action in order to secure taxpayers' rights, but to secure the contract for its own company by citing technicalities upon which the trial court could invalidate its competitors' lower bids.[3] In fact, O'Hara's petition does

3. The evidence given by Mr. Robert Saul, an insurance specialist who testified on O'Hara's behalf, provides justification for the Borough's assertion. Mr. Saul testified on cross-examination as follows:

Q  Mr. Saul, you have worked for O'Hara & Co. for two years, you indicated, correct?
A  Yes.
Q  Subsequent to the opening of these bids, Mr. O'Hara, or somebody from the company, contacted you, did they not?
A  Yes.
Q  And it would be fair to say that within a week after these bids were open, yourself and Mr. O'Hara went down to the borough building?
A  Yes.
Q  And when you went down to the borough building you were looking over the bids that were submitted, correct?
A  Yes.
Q  Did you look over all the bids?
A  Every bid.
Q  And what was your specific purpose of looking over the bids?
A  To determine if there were any deficiencies, and my purpose was only to look at the bonds and guarantee requirements as—

not indicate that this was intended as a taxpayer's suit, nor does it allege that Commonwealth funds were involved in the contract.

The trial court denied O'Hara's request for preliminary injunction based on *Mascaro*, in which we held that a Pennsylvania corporation with offices in Montgomery County had no standing as a taxpayer to challenge a Bucks County contract award. Although *Mascaro* recognized that bidders who are also taxpayers may challenge public contract awards, we did not extend this right to a Pennsylvania taxpayer who paid no taxes in the county which awarded the contract.

■ We relied on *Mascaro* to support our holding in *The General Crushed Stone Company v. Caernarvon Township*, 146 Pa.Commonwealth Ct. 306, 605 A.2d 472 (1992), a factual situation similar to the one here. In *General Crushed Stone*, we held that a disappointed bidder did not have taxpayer standing to challenge the award of a township contract where it was not a taxpayer of the township. In that case, the disappointed bidder/appellant, like O'Hara here, did not contend that it was a township taxpayer; rather, it argued that it had taxpayer standing because it paid the liquid fuels tax, which comprised funding for 60% of the township's project. We determined that these facts did not establish standing because appellant had no greater interest in the liquid fuels tax than any other individual who purchased gasoline. Therefore, we concluded that appellant did not meet the general test for taxpayer standing set forth in *William Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975).[4]

> Q  Mr. Saul, you were looking for, in effect, to get rid of the bids in order that Mr. O'Hara could get the contract, correct?
> A  Yes.
> (R.R. 58–59).

4. Reasoning that appellant "did not have a greater interest or injury than any other taxpayer with regard to the contract at issue," *General Crushed Stone*, 146 Pa.Commonwealth Ct. at 309, 605 A.2d at 473–74, we determined that appellant there did not have the direct and substantial interest or injury *Wm. Penn* requires to challenge governmental action, but rather had only the abstract interest of all taxpaying citizens in having others comply with the law.

We said in *General Crushed Stone,* "[e]ven though the funding of the contract at issue in *Mascaro* was unclear, our court concluded that *Mascaro* [sic] had to pay taxes in Bucks County in order to have taxpayer standing.... We find *Mascaro* to be analogous to the case *sub judice* because *Mascaro* stands for the proposition that a taxpayer whose funds are not at stake has no standing." *General Crushed Stone,* 146 Pa.Commonwealth Ct. at 311–312, 605 A.2d at 474.

Although logically assuming that in *Mascaro,* Bucks County taxpayers were funding the contract in whole or in large part, *General Crushed Stone* nevertheless applied *Mascaro's* rationale in its case, where only 40% of the funding came solely from township taxpayers.[5] In our case, O'Hara's level of interest is even more remote than that of the appellant in *General Crushed Stone.* No information is given regarding the percentage of PennVest's contribution to the total cost of the Borough's sewer project; however, it is clear that this

Similarly, in this case, O'Hara's payment of Pennsylvania taxes does not make its interest distinct from that of an ordinary taxpayer. Moreover, O'Hara has not established itself as an exception to the general rule. In *Application of Biester,* 487 Pa. 438, 409 A.2d 848 (1979), the Supreme Court noted that taxpayers whose interests do not meet the requirements of *Wm. Penn,* may nevertheless merit standing. In situations where governmental activity might escape judicial review because other persons, more immediately affected by the actions, would be disinclined to complain, relaxation of the standing requirements is appropriate. However, in this case, there is no reason to believe that the improper award of a Borough contract would go unchallenged; indeed, case law is replete with such protests. Moreover, here there are numerous other persons better situated to assert the claim than O'Hara; specifically, those who are affected more directly by the contract award because they reside in and pay taxes to the Borough of Moosic.

5. In its decision, *General Crushed Stone* cites the trial court, which concluded that appellant would have had standing if the township contract had been funded by liquid fuel taxes alone. However, because the contract was also financed from the township's general revenue fund, with any additional expenses coming from that fund, appellant would have standing only if it was a township taxpayer whose funds were at stake. Again, we note how much more readily this reasoning applies to the facts here, where we are dealing with a contribution of state funds in loan form, to be repaid solely by Borough taxpayers. In this opinion, we do not need, nor do we choose, to speculate whether the outcome would differ if funding for the Borough sewer project had come from a PennVest grant rather than a loan.

portion of the funding was in the form of a loan, to be fully repaid by Borough taxpayers. Moreover, whereas in *General Crushed Stone*, the disappointed bidder attempted to set aside the township's award of the contract to a higher bidder than itself, O'Hara seeks to prevent the Borough from awarding its contract to the lowest bidder. If O'Hara succeeds in invalidating the lower bids, it would cost the Borough an additional $140,000.00, and delay lifting of the Borough's building moratorium.

Based on *General Crushed Stone*, which required a more expansive utilization of the *Mascaro* rationale, we hold that *Mascaro* unquestionably was applicable to the facts here, and provided appropriate and reasonable grounds for the trial court's denial of O'Hara's request for a preliminary injunction. Accordingly, we affirm its order.[6]

### ORDER

AND NOW, this 18th day of June, 1992, the order of the Court of Common Pleas of Lackawanna County, dated August 5, 1991, is affirmed.

---

6. We note that the Borough alternatively argued that, assuming O'Hara's standing to sue, it nevertheless failed to establish the elements necessary to support a preliminary injunction. Our disposition of the standing issue eliminates the need for us to address this argument.