Mazi A. Ndubisi UCHEOMUMU, David Jackson and Larry Shannon, Appellants,

v.

COUNTY OF ALLEGHENY, Pennsylvania; Robert Cranmer, Larry Dunn and Michael Dawida, Allegheny County Apportionment Commission And Jeannie Riles-Pratt, Edward P. Zemprelli, Joseph Sabino Mistick, Robert M. Owsiany and Keith A. Schmidt, as members of the Allegheny County Apportionment Commission.

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 1999.

Decided April 7, 1999.

Jan C. Swensen, Pittsburgh, for appellants.

Arthur H. Stroyd and George M. Janocsko, Pittsburgh, for appellees.

Before PELLEGRINI, J., FLAHERTY, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Mazi A. Ndubisi Ucheomumu, David Jackson, and Larry Shannon (Appellants) appeal from the December 2, 1998 order of the Court of Common Pleas of Allegheny County (trial court) denying Appellants' petition for a preliminary injunction.

In July of 1997, the Pennsylvania legislature amended the Second Class County Code (Code)[1] with respect to the procedure for changing Allegheny County's Home Rule Charter. The amendment,[2] hereafter referred to as the "Charter Law," provides in part for the establishment of a charter drafting committee authorized to prepare and adopt a home rule charter. Pursuant to the Charter Law, the question of adopting the new home rule charter was submitted to the voters of Allegheny County, who approved the adoption of the proposed charter on May 19, 1998. The results of the election were officially certified on June 25, 1998, in accordance with Section 1404(f) of the Pennsylvania Election Code (Election Code).[3]

On June 11, 1998, the Board of Commissioners of Allegheny County (County Commissioners) enacted Ordinance No. 39432. The ordinance fulfilled the mandate of the Charter Law by establishing the Allegheny County Apportionment Commission (Commission) to apportion the county into thirteen legislative districts from which an elected county legislative council will be formed.[4] The ordinance provides that the Commission is to consist of five members, four of whom are to be nominated by the state legislature and appointed by unanimous vote of the County Commissioners. The fifth member is to be nominated by the first four members and likewise appointed by unanimous vote of the County Commissioners.

The County Commissioners rejected the four nominees (Keith A. Schmidt, Edward P. Zemprelli, Robert M. Owsiany and Joseph Sabino Mistick) initially proposed by the state's legislative leaders because they did not represent the county's diversity as to gender and race. The County Commissioners submitted to the legislature the names of twelve individuals who were more diverse as to gender and race.[5] However, the legislature returned the names of the four initial nominees.

On September 2, 1998, the County Commissioners unanimously approved those nominees and appointed them as the initial four members of the Commission, based upon an understanding that the fifth member would provide diversity to the entire composition of the Commission. On September 24, 1998, the County Commissioners unanimously appointed Jeannie Riles–Pratt, an African–American woman, as the fifth member of the Commission. The Commission adopted an apportionment plan on October 23, 1998.

On November 13, 1998, Appellants filed a class action suit pursuant to 42 U.S.C. § 1983, alleging that the above-named defendants[6] violated Appellants' rights to

1. Act of July 28, 1953, P.L. 230, *as amended*, 16 P.S. §§ 3101–6302.

2. Act of May 20, 1997, P.L. 149, 16 P.S. §§ 4970.3, 5565–5566, 6101–C to 6113–C.

3. Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 3154(f).

4. One council member will be elected from each legislative district and two members of the council will be elected at large.

5. The names of Sala Udin, the Honorable Warren Watson, William Robinson, William Pendleton and K. Leroy Irvis, all African-American males, were among the names considered by the County Commissioners during the nomination process.

6. The defendants are the County of Allegheny, Robert Cranmer, Larry Dunn and Michael Dawida, Allegheny County Apportionment Commission and Jeannie Riles–Pratt, Edward P. Zemprelli, Joseph Sabino Mistick, Robert

equal protection under the Fourteenth Amendment to the United States Constitution and the Pennsylvania Constitution by intentionally excluding African–American males and white females from consideration for service on the Commission. Appellants also alleged that the Commission failed to adopt an apportionment plan within the 120–day time period set forth in the Charter Law.[7] The complaint seeks injunctive relief prohibiting the implementation of the apportionment plan adopted by the Commission and declaratory judgment that the Commission became a nullity and had no authority to act after September 16, 1998.

Also on November 13, 1998, Appellants filed a petition for a preliminary injunction. At a hearing on the petition, the parties stipulated that the facts contained in an August 18, 1998 article in the Pittsburgh Post–Gazette were accurate. (Reproduced Record p. 242.) The article stated that the four white men nominated to the Commission had vowed to select a black woman who was not an elected official to serve as the Commission's fifth member. The article reported that County Commissioner Lawrence Dunn had stated that he had no choice but to consider the four nominees proposed by the legislature, with certain conditions. Commissioner Dunn first wanted to know whom the four nominees would select as the fifth

member of the Commission, and he called for that person to be an individual who would bring true balance to the Commission and who was not involved in partisan political activity. The article also reported that the Commission was required to complete its work by October 23, 1998.

■ Following the hearing, the trial court issued an order denying Appellants' petition. The trial court first concluded that Appellants failed to satisfy any of the criteria necessary for the grant of a preliminary injunction.[8] The trial court further concluded that Appellants lacked standing, that the matter is a non-justiciable political question, that the defendants' conduct constitutes legislative action entitling the defendants to absolute legislative immunity, that the claim is barred by laches, that the apportionment plan was adopted within the 120 days required by the Charter Law, and that the record does not reflect the intent to discriminate necessary to support Appellants' claim that they were denied equal protection.

■ On appeal to this Court,[9] Appellants argue that the trial court erred in determining that Appellants lacked standing, that Appellants had not proven that their rights to equal protection had been violated, that Appellants' claims were barred by laches, and that the Commission

M. Owsiany and Keith A. Schmidt, as members of the Allegheny County Apportionment Commission.

7. Section 3109–C(g) of the Charter Law specifically states that "the Commission shall complete the apportionment within one hundred twenty (120) days of electoral approval of the charter." 16 P.S. § 6109–C(g).

8. A preliminary injunction may only be granted when the moving party establishes the following five elements: 1) relief is necessary to prevent immediate and irreparable harm which cannot be compensated by damages; 2) greater injury will occur from refusing the injunction than from granting it; 3) the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful conduct; 4) the alleged wrong

is manifest and the injunction is reasonably suited to abate it; and 5) the moving party's right to relief is clear. *McCluskey v. Washington Township and Washington Municipal Authority*, 700 A.2d 573 (Pa.Cmwlth.1997), *appeal denied*, 553 Pa. 709, 719 A.2d 748 (1998).

9. When reviewing an order of the trial court granting or denying a preliminary injunction, the appellate court does not inquire into the merits of the controversy, but instead examines the record to determine only whether there are any apparently reasonable grounds for the trial court's decision or whether the rule of law relied upon was erroneous or misapplied. *Concerned Citizens for Better Schools v. Brownsville Area School Dist.*, 660 A.2d 668 (Pa.Cmwlth.1995); *James T. O'Hara, Inc. v. Borough of Moosic*, 148 Pa.Cmwlth. 535, 611 A.2d 1332 (1992).

completed the apportionment plan within the required 120 days. Appellants also maintain that an injunction prohibiting the implementation of the apportionment plan is an appropriate remedy to redress their alleged injury.

 Because we conclude that the application of the *de facto* doctrine precludes an award of the relief requested, we do not address the issues raised on appeal.[10] Under the *de facto* doctrine, the official acts of one who acts under the color of title to an office are to be given the same effect as those of a *de jure* official. *State Dental Council v. Pollock*, 457 Pa. 264, 318 A.2d 910 (1974). The acts of *de facto* officials that are performed under the color of title are valid with regard to the public, even if their election or appointment was irregular or illegal. *Id.*

Moreover, the proposed relief must be tailored to the injury. *Back v. Bayh*, 933 F.Supp. 738, 761 (N.D.Ind.1996). The injury alleged by Appellants is a deprivation of their equal protection rights in that they were denied an opportunity to be considered for appointment to the Commission. Appellants have no complaints about the apportionment plan itself and, therefore, the only proper relief to redress Appellants' alleged injury would be to provide Appellants the opportunity for appointment to the Commission. However, as a matter of law, the Commission's only duty was to submit an apportionment plan and that duty has been completely discharged. Thus, the only proper relief is no longer available. Because the injury alleged in this matter is no longer redressible, we conclude that the controversy is rendered moot.

For this reason alone, Appellants' appeal must be dismissed.[11]

---

10. We note, however, that the issue of the Commission's authority to act beyond September 16, 1998 was previously addressed by this Court in *In Re: Petition To Contest The Primary Election Of May 19, 1998*, (No.1917 C.D.1998, filed October 22, 1998).

ORDER

NOW, April 7, 1999, the appellants' appeal is dismissed as moot.

---

11. An appellate court will address issues rendered moot only when they are of important public significance, of a recurring nature, and capable of repeatedly evading review. *Department of Revenue v. Flaming Angus, Inc.* 80 Pa.Cmwlth. 504, 471 A.2d 1315 (1984).