# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clearwater Construction, Inc. and : 
Northampton County Bridge : 
Partners, LLC, : 
                  Appellants : 
              : 
           v. :  No. 1658 C.D. 2016
             :  Argued: June 8, 2017
Northampton County General : 
Purpose Authority, Northampton : 
County Department of Community : 
and Economic Development, and : 
Kriger Construction, Inc. : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE JULIA K. HEARTHWAY, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
JUDGE COHN JUBELIRER          FILED: July 10, 2017

Clearwater Construction, Inc. and Northampton County Bridge Partners, LLC (Clearwater, collectively) appeal from an October 3, 2016 Order of the Court of Common Pleas of Northampton County (common pleas), which found Clearwater lacked standing to challenge a contract awarded under the Public-Private Transportation Partnership Act (P3 Act), 74 Pa. C.S. §§ 9101-9124. Common pleas found that relief under Section 9109(n) of the P3 Act, 74 Pa. C.S. § 9109(n), was limited to a "development entity," and Clearwater was not a "development entity" as defined by the P3 Act because it was not a party to a

public-private partnership agreement. Finding no error in common pleas' interpretation of the P3 Act, we affirm.

In April 2016, the Northampton County General Purpose Authority (Authority), on behalf of the Northampton County Department of Community and Economic Development (County), issued a Request for Proposals (RFP) for the Northampton County Bridge Renewal Program (Bridge Program), which called for replacement, rehabilitation, and/or maintenance of 33 bridges located in Northampton County. The RFP was issued under the P3 Act. Clearwater[1] and Kriger Construction, Inc. (Kriger) were among four offerors who responded to the RFP and submitted proposals. Ultimately, Kriger was selected to negotiate a public-private partnership agreement with the Authority to develop the Bridge Program.

On September 19, 2016, Clearwater commenced this action by filing a Petition and Claim Pursuant to 74 Pa. C.S. § 9109(n) Protesting the Award of Government Contract (Petition), alleging multiple issues with the RFP process, as well as challenging Kriger's qualifications. On September 27, 2016, Clearwater also filed a Motion for a Preliminary Injunction. On September 28, 2016, the Authority filed Preliminary Objections to Clearwater's Petition, asserting Clearwater lacked standing to file the Petition because Clearwater is only an offeror.

A hearing on the preliminary injunction request was scheduled for September 29, 2016, but common pleas initially heard argument on the preliminary objections because they raised a jurisdictional issue. Following oral argument and

---

[1] The proposal was actually submitted by Northampton County Bridge Partners, LLC, of which Clearwater Construction, Inc. is a member.

2

briefing, common pleas issued an Order on October 3, 2016, finding Clearwater lacked standing, denying Clearwater's motion for injunctive relief, and dismissing the action. This appeal followed.

Whether a party that bids on a municipal project governed by the P3 Act but is ultimately not chosen for the project has standing to challenge the propriety of the selection process is a matter of first impression. The P3 Act is a lesser known and used procurement process, which our Court has only once before had occasion to address, albeit in the context of the Right-to-Know Law (RTKL).[2] *See Dep't of Transp. v. Walsh/Granite JV*, 149 A.3d 425 (Pa. Cmwlth. 2016). There, we compared the P3 Act with the better known Procurement Code (Code), 62 Pa. C.S. §§ 101-2311:

> Under the Procurement Code, contracts are output-based, where the public sector owner identifies the exact outputs required through detailed specifications. Each phase of the project is procured separately and multiple contracts pertaining to that phase may be awarded. Contracts are awarded in stages: companies bid on the design; once the design is completed, a contract is awarded for construction; once construction is completed, it becomes the public entity's maintenance responsibility. Because the Procurement Code process is output-based, most of the risks associated with normal procurement contracts are assumed by the public sector entity. Usually, each project is financed directly by government through capital contributions or debt. . . .
>
> The P3 [Act] presents an alternative method to [that] set forth in the Procurement Code to build or maintain public infrastructure. Under the P3 [Act], procurement of two or more of the project delivery phases can be integrated and those methods may involve anything from designing and constructing to operating, maintaining and financing the project. Moreover, P3 contracts have outcome-based specifications, meaning that the public sector owner specifies its

---

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

3

requirements and the private sector partner determines the best way to meet them. Typically, in a P3 contract, the public sector partner would be responsible for securing its own financing, with the private sector partner financing the upfront capital costs and then recovering its investment over the term of the P3 agreement. Also, the private sector party assumes substantial financial, technical and operational risk, and a Public-Private Transportation Partnership Board was created to oversee the process and select P3 projects.

*Id.* at 430 (citations omitted).

Under Section 9106 of the P3 Act, a public entity may solicit transportation projects through an RFP. 74 Pa. C.S. § 9106. Offerors submit a response, which is then evaluated by the public entity to determine if it is in the best interest of the public entity. *Id.* Here, the Authority, on behalf of the County, utilized this process to solicit bids for the Bridge Program. Clearwater submitted a bid but was not chosen. Unhappy with the selection made, Clearwater brought a claim under Section 9109(n) of the P3 Act. The trial court dismissed the claim, finding Clearwater lacked standing.

"The core concept of standing is that 'a party who is not negatively affected by the matter he seeks to challenge is not aggrieved, and thus, has no right to obtain judicial resolution of his challenge.'" *In re Milton Hershey School*, 911 A.2d 1258, 1261 (Pa. 2006) (quoting *City of Phila. v. Commonwealth*, 838 A.2d 566, 577 (Pa. 2003)). Absent a statutory provision, a disappointed bidder lacks standing because he has no property interest in a public contract and, therefore, has suffered no injury that would entitle him to redress in court. *Black Ash Servs., Inc. v. DuBois Area Sch. Dist.*, 764 A.2d 672, 674 (Pa. Cmwlth. 2000); *James T. O'Hara, Inc. v. Borough of Moosic*, 611 A.2d 1332, 1333 (Pa. Cmwlth. 1992); *J.P. Mascaro & Sons, Inc. v. Bristol Twp.*, 505 A.2d 1071, 1073 (Pa. Cmwlth. 1986).

4

A bidder that is an aggrieved taxpayer of the municipality awarding the contract has standing, however. *Black Ash*, 764 A.2d at 674.

Clearwater maintains Section 9109(n) of the P3 Act provides a statutory basis for a disappointed bidder, such as itself, to challenge the contract award. Section 9109(n) of the P3 Act provides:

> If a development entity is aggrieved by a selection under this section and the proprietary public entity in the contract is an entity other than the Commonwealth, a development entity may file a claim with the court of common pleas where the proprietary public entity is located. The process for the filing and resolution of claims, including rights, contents, timing, evaluation, determination and remedies, which are established in 62 Pa. C.S. Ch. 17, shall apply insofar as they are practicable.

74 Pa. C.S. § 9109(n).

On appeal,[3] both parties argue the plain language of the P3 Act controls, but disagree as to what the plain language means and focus on different terms in Section 9109(n) to support their respective positions. Clearwater argues the plain language of Section 9109(n) of the P3 Act provides parties, like itself, "aggrieved by a selection" to file a grievance challenging the selection. The Authority and Kriger argue the plain language of the P3 Act limits challenges in municipal government projects to a "development entity," which is defined by the P3 Act as a party to a contract awarded under the P3 Act. They also point to other language in Section 9109(n) of the P3 Act, namely the use of the term "claim," as evidence that Section 9109(n) applies only to breach of contract claims by a successful developer awarded a contract, not bid protests from disappointed bidders.

---

[3] This case involves a question of statutory interpretation. Thus, our standard of review is *de novo*, and our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 466 (Pa. 2013).

Clearwater responds that the term "development entity" must be read more broadly than its statutory definition because otherwise only the developer that is selected and enters into a contract would be able to challenge its own selection, which is an absurd result that the General Assembly could not have intended. In support of this broader definition, Clearwater points to introductory language in the definition section of the P3 Act, which allows a court to deviate from the statutory definition of "development entity" when the context clearly indicates a different meaning was intended. In response to Clearwater's argument that it would lack any remedy if the P3 Act is narrowly interpreted, the Authority and Kriger point out that the lack of standing for disappointed bidders of municipal projects is not a new concept; rather, the result is consistent with the common law principle that a disappointed bidder lacks standing because it holds no property interest in the lost contract.

As stated above, disappointed bidders on municipal projects generally lack standing to challenge the selection process unless a statutory provision provides them with a private cause of action. *Black Ash*, 764 A.2d at 674; *O'Hara*, 611 A.2d at 1333; *Mascaro*, 505 A.2d at 1073. We, therefore, must examine the P3 Act to determine whether it confers such a right on Clearwater. Because this matter involves an issue of statutory interpretation, our analysis is guided by the principles of the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501-1991. Our objective is "to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). The statute's plain language is generally the best indicator of legislative intent. *Freedom Med. Supply, Inc. v. State Farm Fire and Cas. Co.*, 131 A.3d 977, 983 (Pa. 2016); *Commonwealth v. McClintic*, 909 A.2d 1241, 1245 (Pa. 2006). Words or phrases are to be construed in accordance

6

with their "common and approved usage" unless they are technical words or have acquired a "peculiar and appropriate meaning," in which case they should be construed in accordance with that "peculiar and appropriate meaning." 1 Pa. C.S. § 1903(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). "A statute is ambiguous when there are at least two reasonable interpretations of the text." *A.S. v. Pennsylvania State Police*, 143 A.3d 896, 905-06 (Pa. 2016). Furthermore, "[i]n construing and giving effect to the text, 'we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear.'" *Id.* (quoting *Roethlein v. Portnoff Law Assoc.*, 81 A.3d 816, 822 (Pa. 2013)).

With these principles in mind, we begin with the plain language of the P3 Act. Clearwater filed its Petition pursuant to Section 9109(n) of the P3 Act, which governs controversies not involving the Commonwealth.[4] It provides that "[i]f a **development entity** is **aggrieved by a selection** under this section and the proprietary public entity **in the contract** is an entity other than the Commonwealth, a **development entity** may file a **claim** with the court of common pleas where the proprietary public entity is located." 74 Pa. C.S. § 9109(n) (emphasis added). "**Development entity**" is defined by the P3 Act as "[a]n entity which **is a party to a Public-Private transportation partnership agreement**" and which is either "(1) [a] private entity [or] (2) [a] public entity, other than the public entity providing or improving its own transportation facilities." 74 Pa. C.S. § 9102 (emphasis added). The Authority and Kriger argue that Clearwater does

---

[4] The parties do not dispute that the Bridge Program is not a project involving the Commonwealth.

7

not meet that statutory definition. Clearwater acknowledges it is not a party to such an agreement but counters that the introduction to the definition section indicates that the definition controls "unless the context clearly indicates otherwise." *See id.* ("The following words and phrases when used in this chapter shall have the meanings given to them in this section **unless the context clearly indicates otherwise[.]**") (emphasis added). Clearwater contends that Section 9109(n) is just such an instance because it provides relief for those "aggrieved by a selection." Because a "development entity" is defined as a party to an agreement, the "development entity" was necessarily already selected. If the statutory definition of "development entity" is used in Section 9109(n), according to Clearwater, the provision is rendered superfluous because no party to an agreement is going to dispute its own selection process. Clearwater argues such a result would be absurd.

We agree with Clearwater that context is important. Our Supreme Court has cautioned against interpreting statutory words in isolation, urging instead that we read them in reference to the context in which they appear. *Roethlein*, 81 A.3d at 822. Therefore, it is necessary to examine the context in which "development entity" is used in Section 9109(n). When we do so, there are a number of factors that weigh in favor of the Authority and Kriger's interpretation and against Clearwater's. For instance, Section 9109(n) speaks of controversies a development entity may have with a "proprietary public entity **in the contract**." 74 Pa. C.S. § 9109(n) (emphasis added). This lends support for the conclusion that the statutory definition of "development entity," *i.e.*, a party to a public-private transportation agreement, controls. Second, Section 9109(n) provides for the filing of a "claim." *Id.* Although not statutorily defined, in public work projects, the term "claim" is

8

usually confined to breach of contract claims a contractor has with the public entity, whereas the term "bid protest" covers disputes involving the bidding process, such as here. *Compare* 62 Pa. C.S. § 1711.1 (governing "protests" of offerors) *with* 62 Pa. C.S. § 1712.1 (governing "claims" of contractors).

However, when interpreting a statute, we must give effect to **all of the words** of a statute. *Governor's Office of Admin. v. Purcell*, 35 A.3d 811, 820-21 (Pa. Cmwlth. 2011). Here, Section 9109(n) discusses development entities "aggrieved by a selection." While the rest of Section 9109(n) appears to be talking about parties to a contract, inclusion of this language is troublesome because, as Clearwater points out, it is difficult to envision a circumstance in which a party to a contract is going to be aggrieved by being selected to become a party to that contract. Therefore, the plain language of Section 9109(n) is not as clear as any of the parties claim it is.

When the language of a statute is ambiguous, such as here, the Court may consider, among other matters: (1) the occasion and necessity for the statute; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other statutes upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of the statute. 1 Pa. C.S. § 1921(c). In addition, "[t]here is a presumption that when the legislature adopts a statute it does so with full knowledge of existing statutes relating to the same subject." *Concerned Citizens for Better Schools v. Brownsville Area Sch. Dist.*, 660 A.2d 668, 671 (Pa. Cmwlth. 1995). If statutes relate to the same persons or things, they are in *pari materia* and should be construed together, if possible, as one statute. 1 Pa. C.S. § 1932.

9

Here, Clearwater argues that, even if the Court determines the language of the P3 Act is ambiguous, it still must prevail when these extrinsic factors are considered. First, it once again argues potential development entities would be otherwise foreclosed from challenging the selection process, which the "occasion and necessity" of the statute requires. Second, given the magnitude of public-private partnership agreements, both in terms of cost and time, the circumstances under which the P3 Act was enacted requires entities, like itself, to be permitted to scrutinize the selection process. Third, mischief would result if offerors who are not selected could not challenge the fairness, openness, and transparency of the selection process. Fourth, it argues the legislative history is of limited assistance because lawmakers held no substantive discussions regarding amendments to pertinent provisions of the P3 Act. Finally, Clearwater argues that Section 9109(n) of the P3 Act should be read in *pari materia* with Section 1711.1 of the Code, 62 Pa. C.S. § 1711.1, and when the two statutes are read together, Clearwater claims unsuccessful bidders must be given the right to pursue a selection grievance.

According to the Authority and Kriger, if the statute is found to be ambiguous, several factors demonstrate the General Assembly's intent to limit standing in Section 9109(n) to development entities, as defined. This includes the P3 Act's legislative history, which they argue demonstrates a legislative intention to distinguish between what remedies are available and by whom. The Authority and Kriger again emphasize that disappointed bidders of municipal projects generally lack standing. Kriger adds that the P3 Act does not differ significantly from other mechanisms of bidding local government projects and, therefore, disappointed bidders to such projects should not be treated differently. Furthermore, Kriger notes that even Commonwealth projects under the Code do

10

not allow a disappointed bidder to file a bid protest **directly** with any court; rather, bid protests are generally an administrative protest with appeal rights to our Court, making Clearwater's interpretation unreasonable. Lastly, the Authority and Kriger contend the Code actually supports their position, not Clearwater's. Instead of applying Section 1711.1 of the Code, as Clearwater urges, they claim Section 1712.1 of the Code is the more appropriate section to apply because it refers to claims by a contractor for breach of contract, not bid protests by offerors or disappointed bidders, as is the case here.

When extrinsic factors are taken into consideration, it becomes clear that the General Assembly intended the statutory definition of "development entity" to control in Section 9109(n). This intent is evidenced by a comparison between paragraph (n) and paragraph (m) of Section 9109 of the P3 Act. The immediately preceding paragraph, Section 9109(m), governs controversies involving **Commonwealth** projects, and provides prospective offerors, offerors, or development entities with relief, whereas Section 9109(n) does not. Section 9109(m) provides, as follows:

> If a **prospective offeror, offeror or development entity** is **aggrieved by a selection** under this section and the public entity or proprietary public entity **in the invitation or contract** is a Commonwealth agency, the prospective offeror, offeror or development entity may file a **protest or a claim**, as appropriate, in accordance with 62 Pa.C.S. Ch. 17 (relating to legal and contractual remedies).

74 Pa. C.S. § 9109(m) (emphasis added).

It is apparent from this terminology that the General Assembly intended this section to be broader than Section 9109(n) because it encompasses not just development entities, but also prospective offerors and offerors. "Offeror" is defined as "[a] person that submits a proposal or a response in answer to a request

11

for proposals or transportation projects." 74 Pa. C.S. § 9102. Clearwater would be classified as an "offeror" as it submitted a proposal in response to the Authority's RFP. Clearwater acknowledges as much, identifying itself as an "offeror" in its Petition. (Petition ¶ 2.) Notably, this section includes not just **contracts** but also references **invitations**, which is consistent with the inclusion of prospective offerors and offerors. In addition, Section 9109(m) extends not just to filing a **claim** but also permits the filing of a **protest**, which is indicative of an intent to expand the relief available for Commonwealth projects. If this case involved a Commonwealth project, Clearwater, as an offeror, would be entitled to file a bid protest challenging the invitation process. However, this case involves a local government unit and, consequently, Section 9109(m) does not apply. Section 9109(n) does not entitle offerors to file a bid protest. It is apparent that the General Assembly differentiated between the parties entitled to seek relief depending upon whether the project involved the Commonwealth or not.

This conclusion is reinforced by an examination of the P3 Act's legislative history. In November 2011, the House of Representatives amended the then-proposed bill to replace the original definition of "development entity," which was broader and included those bidding or responding to a solicitation, to the current, enacted definition. H.R. 3, 159th Gen. Assemb. (Pa. 2011), Supplemental Reproduced Record (S.R.R.) at 21b-22b.

At that time, Section 9110(n),[5] governing controversies not involving the Commonwealth, provided as follows:

> If a **prospective offeror, offeror or development entity** is aggrieved
> by a selection under this section and the public entity or proprietary

_____

[5] This section was renumbered to Section 9109(n) in the current P3 Act.

public entity **in the invitation or contract** is an entity other than the Commonwealth, **a prospective offeror, offeror or development entity may file a protest or a claim**, as appropriate, with the court of common pleas where the public entity or proprietary public entity is located.

*Id.*, S.R.R. at 42b (emphasis added). However, by February 2012, the House amended the section, striking the above language, in its entirety, and replacing it with the current language of Section 9109(n). *Id.*, S.R.R. at 161b. This amendment eliminated reference to prospective offerors and offerors, as well as mention of invitations and protests, evidencing intent to differentiate what remedies are available to whom depending on whether the project involved the state versus local government.

Clearwater argues that the legislative history is of limited value as there is no substantive discussion regarding the change in language. We agree that it would have been ideal to have discussion so we could understand the logic behind the changes, but disagree that the changes are meaningless. "A change in the language of a statute ordinarily indicates a change in legislative intent." *Meier v. Maleski*, 670 A.2d 755, 759 (Pa. Cmwlth. 1996). We have held that "the legislature's deletion of statutory language renders the language inoperative and indicates that the legislature has admitted a different intent." *Id.* Here, the General Assembly's conscious decision to amend the bill to **exclude offerors** from bringing a claim against a non-Commonwealth entity, while allowing them to pursue protests against the Commonwealth, is strong evidence of its intent to distinguish the two. It also is evidence that if the legislature wanted to include offerors in Section 9109(n), it certainly knew how to do so. If we were to accept Clearwater's argument and interpret Section 9109(n) as it urges us to do, we would be essentially rewriting the statutory provision and reinstating the exact language that

13

the General Assembly specifically removed before enactment. This is beyond our authority to do.

Clearwater urges that its construction of the P3 Act must be given effect because the General Assembly could not have intended this result. We note, however, that under the common law, disappointed bidders similarly lacked standing to challenge the propriety of the bid process, unless they were taxpayers. *Black Ash*, 764 A.2d at 674; *O'Hara*, 611 A.2d at 1333; *Mascaro*, 505 A.2d at 1073. It is also consistent with the Procurement Code. Although there are differences between the procurement processes found in the P3 Act and Procurement Code, the differences are not so great as to override the plain language of the P3 Act or the legislature's intent.

Absent a statutory provision to the contrary, generally disappointed bidders lack standing to challenge the award of a government contract. Section 9109(n) of the P3 Act does not provide that statutory basis as its application is limited to a "development entity," which by statutory definition is a party to the contract.

Because Clearwater is not a development entity and is merely an offeror, common pleas properly dismissed the Petition brought by Clearwater challenging the Bridge Project's RFP process. Accordingly, we affirm.

 

 

**RENÉE COHN JUBELIRER,** Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clearwater Construction, Inc. and    :
Northampton County Bridge    :
Partners, LLC,    :
              Appellants    :
    :
           v.    :    No. 1658 C.D. 2016
    :
Northampton County General    :
Purpose Authority, Northampton    :
County Department of Community    :
and Economic Development, and    :
Kriger Construction, Inc.    :

# O R D E R

NOW, July 10, 2017, the Order of the Court of Common Pleas of Northampton County, dated October 3, 2016, is **AFFIRMED.**

_____
**RENÉE COHN JUBELIRER,** Judge