641 A.2d 671

Donald E. SMITH, Michael Cheberenchick and
Joseph A. Caruso, Police Wage and Policy
Committee, Appellants,

v.

BOROUGH OF CASTLE SHANNON, Thomas P. O'Malley, May-
or, Borough of Castle Shannon, James L. Campbell, Chief of
Police, Borough of Castle Shannon; E.R. McFadden, Borough
Manager, Borough of Castle Shannon; and Donald Baumgar-
ten, Ted Kirk, Robert Carlucci, Michael Cheberenchick, Paul
Coffey, Wayne McCluskey and Regis Zezulewicz, Members of
Council, Borough of Castle Shannon.

Commonwealth Court of Pennsylvania.

Submitted March 2, 1994.

Decided April 21, 1994.

Ronald P. Koerner, for appellants.

Timothy P. O'Reilly, for appellees.

Before CRAIG, President Judge, and COLINS, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

McGINLEY, Judge.

Donald E. Smith, Michael Cheberenchick and Joseph A. Caruso (collectively, police officers[1]) appeal from an order of the Court of Common Pleas of Allegheny County (common pleas court) sustaining the preliminary objections of the Borough of Castle Shannon (Borough)[2] to the complaint in mandamus filed by the police officers and dismissing their complaint.

The police officers and the Borough, pursuant to a collective bargaining agreement (CBA), agreed that all police work assignments would be created on a rotating basis by the Borough under Article V—Master Schedule[3] of the CBA. In 1991, a dispute arose between the police officers and the

1. The police officers were elected to the Wage and Policy Committee of the Borough Police Department pursuant to the Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10 (Act 111).

2. Also, the following defendants are named in the present action:
   Thomas P. O'Malley, the Borough's mayor, James L. Campbell, the Borough's police chief, E.R. McFadden, the Borough's manager, and all individual members of the Borough's council; i.e., Donald Baumgarten, Ted Kirk, Robert Carlucci, Michael Cheberenchick, Paul Coffey, Wayne McCluskey and Regis Zezulewicz.

3. Article V of the CBA provides:
   The present system (master schedule) whereby each officer knows well in advance his scheduled shifts and duties shall be maintained. The employer shall establish a master schedule such as contained in Schedule D or one as similar thereto as is practically possible in the circumstances.
   . . . .
   The Borough will make every reasonable effort to minimize the number of changes in an officer's scheduled shifts set forth on the master schedule. If a schedule change is necessary, the Borough will give the affected officer reasonable notice prior to the change.
   Article V of the Collective Bargaining Agreement, November 4, 1991.

Borough concerning the alleged failure of the Borough to follow the work and vacation schedules under Article V and Article IX[4] of the CBA. The police officers filed two grievances against the Borough. At Grievance No. 55–390–0144–91(1) the police officers alleged that the Borough refused to follow the required Master Schedule and that the Borough failed to give officers reasonable notice of changes in their work schedules. At Grievance No. 55–390–0144–91(2) the police officers alleged that the Borough did not allow officers to choose their vacation time based on seniority and that the Borough did not allow the officers to request single day vacations. The grievances were submitted to binding arbitration pursuant to Article XXI of the CBA. A hearing was held before Arbitrator Edward E. McDaniel.

The Arbitrator sustained the grievances and issued an arbitration award directing the Borough at Grievance No. 55–390–0144–9(1) to "cease and desist from any future denials of Master Schedule assignments, and from making prohibited 'changes' in employees work schedules." The Arbitrator also directed at Grievance No. 55–390–0144–9(2) that the Borough "abandon the 'early leave requests' requirement under challenge and ... that it cease and desist from imposing any future such requirement." Findings and Award of Arbitrator, November 4, 1991; Reproduced Record (R.R.) at 18a and 27a. The Borough did not appeal the awards.

**4.** Article IX—Vacations of the CBA provides:

(a) Members of the Unit shall be entitled to the following vacation schedule and shall select their vacations each year according to seniority:

| | |
|---|---|
| One year service but less than five years | Two weeks |
| Five years service but less than ten years | Three weeks |
| Ten years service but less than twenty years | Four weeks |
| Twenty years service | Five weeks |

(b) Any member on scheduled vacations who is required to return to work shall be paid time and one half (½) for all hours worked and will be given compensation time off.

(c) The Chief of Police shall not be included in the regular vacation schedule pick with the other members of the Unit. Vacation days may be picked on (1) day at a time, provided the officer gives notice of his intent to take a vacation day at least three (3) days in advance. Collective Bargaining Agreement, November 4, 1991.

On February 19, 1992, the police officers filed a complaint in mandamus alleging that the Borough failed to comply with the arbitration awards. The police officers made the following allegations:

11. The aforesaid arbitration grievance awards rendered by Arbitrator Edward E. McDaniel (copies attached hereto), as well as the provisions of Act 111 (43 P.S. § 217.1 et seq) imposed a mandatory duty upon the defendants to comply with the provisions of the award and to cease and desist the conduct that is prohibited by said award.

12. The defendants violated their mandatory duty under the aforesaid grievance award and statutes by refusing to abide by the awards by continuing in the following activities:

1. By making denials of Master Schedule Assignments;

2. By unilaterally making changes in the Master Schedule Assignments without adequate notice to the police officers involved;

3. By continuing to propose "early leave requests" upon the police department; and

4. In totally disregarding the directives and prohibitions contained in the arbitration awards.

13. That the plaintiffs have been damaged as a result of the defendants' refusal to comply with their mandatory duty in that their schedules, as set forth in the Master Schedule, are being constantly disrupted without adequate notice by the defendants and as a result they are unable to plan or participate in family activities and they are also being required to make "early leave requests" in violation of the arbitration awards.

Complaint, February 22, 1992, Paragraphs 11, 12, and 13 at 4–5.

The Borough filed preliminary objections in the nature of a demurrer alleging that the complaint failed to state a claim upon which relief can be granted; that mandamus is not available; and that the Borough has complied with the award. The common pleas court sustained the preliminary objections, concluding that "the complaint alleged no single purely minis-

terial duty to be performed" and that "[w]ork scheduling requires a long series of continuous acts and mandamus is not the appropriate remedy to compel a general course of official conduct." Opinion of the Common Pleas Court, January 12, 1993, at 1. The common pleas court dismissed the complaint and the police officers appeal.

On appeal to this Court the police officers contend that mandamus is appropriate in order to compel the Borough to comply with the grievance award. The police officers contend that the CBA establishes the right of the parties to submit to grievance binding arbitration in order to resolve disputes concerning interpretation of the provisions of the CBA.

Recently our Pennsylvania Supreme Court and this Court addressed the issue of whether the common pleas court has jurisdiction where a municipality fails to proceed to interest arbitration as directed in an arbitration award. In *Borough of Nazareth v. Pennsylvania Labor Relations Board*, 534 Pa. 11, 626 A.2d 493 (1993) the Nazareth Police Association (Association) filed an unfair labor practice charge with the Pennsylvania Labor Relations Board (PLRB) alleging that the refusal of the Borough of Nazareth (Nazareth) "to name an arbitrator constituted a refusal to bargain in good faith in violation of Section 6(1)(a) and (e) of the Pennsylvania Labor Relations Act (PLRA) [Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. § 211.6(1)(a) and (e) ] and Act 111." *Id.* at 12, 626 A.2d at 494. Nazareth denied that the Association was the proper bargaining representative and refused to proceed to interest arbitration. The PLRB determined that Nazareth's refusal to arbitrate constituted an unfair labor practice and that the Association was the proper bargaining representative. The PLRB ordered the parties to proceed to interest arbitration pursuant to Act 111.

In *Nazareth* the Supreme Court stated:

While the provisions of Act No. 111 were enacted later than the PLRA and, of course, are controlling where the situation warrants, unlike the PLRA and the Public Employe Relations Act (PERA) [Act of July 23, 1970, P.L. 563,

as amended, 43 P.S. §§ 1101.101–1101.2301], Act 111 does not have a specific section which addresses unfair labor practices. Additionally, although Act 111 does not contain a section which specifically gives the PLRB jurisdiction, the PLRB is empowered under Section 8 of the PLRA (43 P.S. § 211.8(a)) to prevent any person from engaging in any unfair labor practice listed in Section 6 of the act.

. . . .

Additionally, the PLRB is in the best position to resolve all unfair labor practice issues. In *City of Philadelphia v. Labor Relations Board,* the Commonwealth Court noted that the PLRB:.

> [P]ossesses administrative expertise in the area of public employee labor relations and that great deference ought to be given to the PLRB's assessment of the often competing concerns relevant to the issue of whether the conduct of an employer or a union constitutes a refusal to meet the mutual obligation to bargain in good faith.

138 Pa.Commw. 113, 120, 588 A.2d 67, 71 (1991), appeal denied, 528 Pa. 632, 598 A.2d 285 (1991) (quoting *Richland School District v. Pennsylvania Labor Relations Board,* 71 Pa.Commw. 45, 454 A.2d 649 (1983).

Therefore, we hold that the Borough's failure to proceed to interest arbitration under Act No. 111 is an unfair labor practice over which the PLRB has jurisdiction.

*Nazareth,* 534 Pa. at 14–15, 626 A.2d at 495–496 (footnote omitted).

In *Pottstown Police Officers' Association v. Pennsylvania Labor Relations Board,* 160 Pa.Commonwealth Ct. 87, 634 A.2d 711 (1993) this Court, en banc, relied on *Nazareth* and determined that the Borough of Pottstown's failure to comply with the result of the dispute resolution process constituted an unfair labor practice.[5] In *Pottstown* this Court stated:

5. In *Pottstown* the Pottstown Police Association (Association) "alleged that a grievance was filed on behalf of Officer Charles McClincy concerning improper payment of premium wages for appearances before magistrates" and that "the grievance was resolved in favor of Officer McClincy ... [and] that the Borough took no action in response

With respect to the specific issue presented in this appeal, the Association asserts that the Borough's alleged refusal to comply with the result of the dispute resolution process must be treated in the same manner as an employer's refusal to participate in the dispute resolution process. We agree.

The dispute resolution process between the Borough and the Association is defined by the provisions of the Act 111 collective bargaining agreement into which the parties voluntarily entered. Having concluded earlier in this opinion that an employer's refusal to arbitrate grievance filed on behalf of an employe is an unfair labor practice over which the PLRB has jurisdiction to determine whether an employer's alleged failure to comply with the result of the contractually defined grievance process is an unfair labor practice.

*Id.* at 100, 634 A.2d at 714.

In the present controversy the PLRB has jurisdiction to determine whether the Borough's alleged failure to comply with the arbitration award is an unfair labor practice. *Nazareth* and *Pottstown.*

Accordingly, we vacate the decision of the common pleas court and transfer the present matter to the PLRB.

### ORDER

AND NOW, this 21st day of April, 1994, the order of the Court of Common Pleas of Allegheny County at No. G.D. 92–3306, dated December 10, 1992, is vacated and the above matter is transferred to the Pennsylvania Labor Relations Board. The chief clerk shall certify a photocopy of the docket entries of the above matter and the record to the Secretary of the Pennsylvania Labor Relations Board.

to the resolution of the dispute in Officer McClincy's favor." *Id.* at 89, 634 A.2d at 712.