**BURRELL EDUCATION ASSOCIATION**

v.

**BURRELL SCHOOL DISTRICT and Board of School Directors of the Burrell School District, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 1995.

Decided April 2, 1996.

Reargument Denied May 3, 1996.

Timothy J. Finkelston, for Appellants.

Ronald N. Watzman, for Appellee.

Before DOYLE and SMITH, JJ., and MIRARCHI, Senior Judge.

DOYLE, Judge.

This is an appeal by the Burrell School District and the Board of School Directors of the Burrell School District (collectively, the "District") from an order of the Court of Common Pleas of Westmoreland County, which denied post-trial relief and affirmed the terms and conditions of the March 20, 1995 order of the court of common pleas. The March 20, 1995 order granted a permanent injunction directing the District to comply with all of the terms and conditions of the October 25, 1994 Memorandum of Understanding (Agreement) executed by five members of the District and the Burrell Education Association, a certified exclusive collective bargaining representative for the professional employees of the District (The Association and its members will be collectively referred to as the "Association").

Since January of 1994, the Association and the District had been negotiating in an attempt to reach an agreement on a collective bargaining agreement for the provision of professional services to the District. The parties reached an impasse before the commencement of the 1994–95 school year, but the Association returned to work without a contract. Then, on October 6, 1994, the Association went on strike and the District's schools were closed.

As a result of the work stoppage, on October 25, 1994, an Agreement was entered into and signed by the Association and five members of the District. The Agreement provided, in part, that the parties would engage in non-binding arbitration of the parties' unresolved bargaining issues and the arbitration would be completed within time periods provided in Act 88.[1] The Agreement also stated that the District would make a minimum financial offer of $7,000.00 plus the cost of a bump step over a four-year contract period, that no loss of workdays by the professional staff would occur, nor would any reprisals or harassment occur. Immediately following the Agreement, the Association returned to work. The work stoppage had lasted fourteen school days.

On February 9, 1995, the District informed the Association that it would not honor the Agreement, and then on February 28, 1995, the District began taking deductions for medical insurance premiums and life insurance premiums from the Association's paychecks for the period of time in which the work stoppage occurred.[2]

The Association then filed a complaint in equity and a petition for a preliminary injunction seeking enforcement of the terms of the Agreement. A preliminary injunction hearing was held, and the court of common pleas granted a **permanent** injunction on March 20, 1995. The order of the court required the District to begin arbitration immediately, to cease and desist from deducting medical and life insurance premiums from the Association's paychecks, and to remit the deductions already made.

The District then filed a motion for post-trial relief, asserting that the District was

---

1. Sections 1101–A to 1172–A of The Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, added by, Act 88, Act of July 9, 1992, P.L. 403, 24 P.S. §§ 11–1101–A to 11–1172–A. Act 88 provides, *inter alia*, for manda-

tory arbitration where a strike would prevent the school district from scheduling 180 days of classes.

2. The parties stipulated the facts in this case.

permitted to withhold the insurance premiums in a lockout situation pursuant to *Philadelphia Housing Authority v. Pennsylvania Labor Relations Board,* 153 Pa.Cmwlth. 20, 620 A.2d 594, *petition for allowance of appeal denied,* 536 Pa. 634, 637 A.2d 294 (1993). The court denied the post-trial motion, and the District now appeals to this Court.

On appeal, the District argues that the trial court erred (1) in issuing a permanent injunction upon a petition for only a preliminary injunction; and (2) in holding that a public employer does not have a limited right to lockout its public employees once they have engaged in a work stoppage under this Court's holding in *Philadelphia Housing Authority.*

▪ The District's first issue is that the trial court erred in treating the hearing on the preliminary injunction as a final hearing on the merits.[3] The District requests a remand for a full hearing on the permanent injunction. The Association counters that this issue has been waived since the District failed to raise it in its motion for post-trial relief. We agree.

Pa.R.C.P. No. 227.1, which pertains to post-trial relief, is explicit as to the conditions precedent which must be met to preserve an issue for appellate review and avoid an issue being waived. Specifically, Pa. R.C.P. No. 227.1(b)(1) and (b)(2) state:

(b) Post-trial relief may not be granted unless the grounds therefor,

(1) if then available, were raised in pretrial proceedings or by motion, objection, point of charge, request for findings of fact or conclusions of law, offer or proof or other appropriate method at trial; and

. . . .

▪ are specified in the motion. The motion shall state ... the grounds.... *Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.*

(Emphasis added.)

▪ Only issues which a party specifically raises in its post-trial motion are preserved and will be considered on appeal. *Mendicino v. Rendina,* 523 Pa. 293, 566 A.2d 854 (1989); *Borough Council for the Borough of Millbourne v. Bargaining Committee of the Millbourne Borough Police,* 109 Pa.Cmwlth. 474, 531 A.2d 565 (1987) (since the appellant failed to file a post-trial motion to an order effective in thirty days, all issues were waived pursuant to Pa.R.C.P. No. 227.1, and the appeal was quashed).

▪ Here, the District did not raise the impropriety of the trial court's grant of a permanent injunction until after it treated the court's order as such and filed the post-trial motion under R.C.P. No. 227.1. We, therefore, find that the issue has been waived.[4]

▪ The remaining issue to resolve in this case is whether the District is precluded from deducting from the Association's paychecks premiums for insurance for the period of time that the Association was on strike. The District relies upon this Court's holding in *Philadelphia Housing Authority* as support for its argument. The Association, on the other hand, argues that *Philadelphia Housing Authority* is not controlling and not dispositive to the facts in the instant case.

In *Philadelphia Housing Authority,* the collective bargaining agreement between the Philadelphia Housing Authority (PHA) and

---

**3.** It is well established that a court may not treat a hearing for a preliminary injunction as a final hearing and as a basis for a permanent injunction, unless the parties stipulate to the contrary. *Soja v. Factoryville Sportsmen's Club,* 361 Pa.Superior Ct. 473, 522 A.2d 1129 (1987).

**4.** We note that the District could have foregone filing a post-trial motion and directly appealed to this Court from the order granting the permanent injunction, since nothing in the order indicated that it was not a final order; that is, no decree nisi was entered as required by Pa.R.C.P. No. 1517. *Trinity Lutheran Evangelical Church*

*v. May,* 112 Pa.Cmwlth. 557, 537 A.2d 38, 41 (1988) (post-trial motions were not required to be filed because the order of the court granting the permanent injunction had "no indication that it was other than a final order, it was not labeled as a decree nisi as required by Pa.R.C.P. No. 1517."); *see also Pennsylvania Interscholastic Athletic Association v. Greater Johnstown School District,* 76 Pa.Cmwlth. 65, 463 A.2d 1198 (1983). Moreover, the District even characterized the order as being final. (Motion for Post-trial Relief; Reproduced Record (R.R.) at 55a.)

the Union had expired. PHA made a final offer to the Union, which was rejected and negotiations then reached an impasse; however, the Union did not strike. PHA then unilaterally implemented its last offer and reduced the employee's benefits. This Court recognized that although a public employer's economic weapon is a unilateral implementation of its final proposal, such action can only occur where the employees are striking. In so holding, we quoted the Pennsylvania Labor Relations Board, which stated:

> [I]t would not serve the legislature's declared goal of promoting orderly and constructive relationships between public employers and their employes through good faith collective bargaining to allow a public employer to implement its final offer when the employes in the unit have not disrupted the continuation of public services by striking. Unilateral action by an employer during a period of no contract while employes continue to work serves to polarize the process and would encourage strikes by employes who otherwise may wish to continue working under the terms of the expired agreement while negotiations continue.

*Philadelphia Housing Authority,* 620 A.2d at 600.

Here, at the time the District unilaterally withheld insurance premiums the Association was no longer engaged in a work-stoppage, nor was there an impasse—**an interim Agreement had been signed.** Additionally, there are no facts before this Court which indicate that the District's "final offer" included deductions for insurance premiums. Therefore, *Philadelphia Housing Authority* does not support the District's argument, and is actually contrary to their position.

Moreover, the trial court cogently stated that the instant case involves a contract dispute rather than a unfair labor practice. (3/10/95 Hearing at 23–25; R.R. at 47a–49a.) The court held that there was an agreement that the parties would arbitrate the remaining disputed issues, that the loss of school days would be made up, and that no reprisals would occur. "[A]n agreement has been

reached. While the agreement in question is not the final and complete resolution of the entire labor contract situation, it nevertheless constitutes a completed interim agreement." (Trial court opinion at 5.) It is within the court's power to decide whether the parties' mutually assented to the agreement.

 The court concluded that the District breached the Agreement in deducting the premiums, since the parties agreed that all of the school days lost due to the strike would be made up.[5] Since no school days would be lost, the District's deduction of the insurance premiums are a reprisal for the strike, *Woodland Hills Education Association v. Woodland Hills School District,* 96 Pa.Cmwlth. 502, 508 A.2d 365 (1986), and the Agreement clearly states that no reprisal would occur.

Thus, we find the implementation of such unilateral action does not further the negotiations between the parties, and the District's unilateral action is an impermissible breach of the Agreement. Accordingly, we affirm the order of the Court of Common Pleas of Westmoreland County denying post-trial relief, requiring the District to fully comply with the Agreement, cease and desist from deducting for insurance premiums, and to remit the deductions previously made.

### ORDER

Now, April 2, 1996, the order of the Court of Common Pleas of Westmoreland County in the above-captioned matter is hereby affirmed.

SMITH, J., concurs in the result only.

---

**5.** The Association in its brief to this Court states that the days lost were actually made up, and the District does not dispute this statement. (Association's brief at 9.)