CENTRAL DAUPHIN EDUCATION ASSOCIATION and Valerie T. McCaffrey

v.

CENTRAL DAUPHIN SCHOOL DISTRICT, Board of School Directors of the Central Dauphin School District, Dale Merchant, Michael Mausner, Debra Loskamp, Shawnee Smith, Virginia Baker, Robert Lang, Sharon Lucas, Michael Gruber, Helen Wagner and Barbara L. Hasson, Appellants.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 2001.
Decided Nov. 27, 2001.
Publication Ordered Feb. 25, 2002.

692 ■ 

John P. Krill, Harrisburg, for appellants.

Thomas W. Scott, Harrisburg, for appellees.

Before McGINLEY, Judge, PELLEGRINI, Judge, and McCLOSKEY, Senior Judge.

McGINLEY, Judge.

Central Dauphin School District (District) appeals from a preliminary injunction granted by the Court of Common Pleas of Dauphin County (common pleas court), which required District to provide work to teachers pursuant to an expired collective bargaining agreement. Also, before this Court is Central Dauphin Education Association's (Association) motion to dismiss the appeal as moot because the parties have ratified a new collective bargaining agreement.

District and Association are parties to a collective bargaining agreement that was scheduled to expire on June 30, 2000, (Agreement). Beginning on February 8, 2000, five months before the Agreement expired, the parties bargained toward a new agreement. Negotiations were unsuccessful.

In March, a mediator from the Department of Labor and Industry joined in the bargaining.[1] The Teachers returned to school in August 2000, under the terms of

1. The negotiations were governed by both the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301, and Article XI A of the Public School Code, of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 11-1101A–1172–A, Article XI A was added by the Act of July 9, 1992, P.L. 403, No. 88 (Act 88). Act 88 created a statutory scheme of collective bargaining which assured the completion of 180 days of instruction in part by limiting the number and duration of strikes and similarly limiting lockouts. 24 P.S. §§ 11-1131 A(2) 11-1132 A(2).

the expired Agreement. In September, they submitted the matter to a fact-finder. The fact-finder issued his report and both the Association and the District rejected the report. Mediated negotiations continued through the end of January 2001, but the parties could not agree.

The Association commenced a lawful strike on February 1, 2001.[2] On February 5, 2001, the District passed a resolution (February 5 Resolution), effective immediately, and imposed new terms and conditions of employment including new wages and health care coverage (Imposed Agreement).

The teachers planned to return to work on February 22, 2001, in accordance with the requirements of Act 88 to ensure the completion of 180 days of school.[3] The District indicated the only terms and conditions under which they could return to work were those of the Imposed Agreement. The Association communicated its membership would not return under those terms.

In response, on February 16, 2001, the Association requested the common pleas court to preliminarily enjoin the District from enforcing the Imposed Agreement.

On February 21, 2001, the common pleas court granted the preliminary injunction and ordered (1) the Association members to return to work on February 22, 2001; (2) the District to provide work under the same terms and conditions as provided under the expired Agreement; (3) the Association to post a $5000 bond; and (4) transferred the consideration of any possible unfair labor practices committed by the District to the Pennsylvania Labor Relations Board (PLRB); and (5) the filing of any appeal of the order not to act as an automatic stay pursuant to Pa. R.A.P. 1736 without an order from a court of superior jurisdiction.

The common pleas court found as follows:

> A critical component of this matter is that the School District's unilateral implementation took place prior to the utilization of arbitration procedures outlined in Act 88.... Although Act 88 clearly provides arbitration procedures for the parties to utilize, these procedures were not employed prior to the School District's imposition of terms and conditions of employment, vis-à-vis, the Imposed Agreement.

Opinion of the Court of Common Pleas, March 30, 2001, (Opinion) at 8–9.

With respect to subject matter jurisdiction, the common pleas court found:

> [P]ursuant to the extensive line of cases decided under *Mazzie v. Commonwealth*, 495 Pa. 128, 432 A.2d 985; [sic] 495 Pa. 128, 432 A.2d 985 (1981), that we were completely within our powers to issue a Preliminary Injunction in order

---

**2.** Section 1101 A states: "the employe organization having called a strike once and unilaterally returned to work may only call a lawful strike once more during the school year." 24 P.S. § 11–1101–A.

**3.** Section 1125A(b) of Act 88 states:

> If a strike by Employes or a lockout by an employer will prevent the school entity from providing the period of instruction required by Section 1501[180 days] by the later of: (1) June 15; or (2) the last day of the school entities scheduled school year;

the parties shall submit to mandated final best-offer arbitration. A return to work for the purpose of submitting to final best-offer arbitration shall not be considered a unilateral return to work.

24 P.S. § 11–1125 A(b). The Department of Education notified the Bureau of Mediation that the strike at the school had to end by February 22, 2001, in order to provide the 180 days of instruction by June 15, 2001. Complaint, Paragraph 69 at 17; Reproduced Record (R.R.) at 27a.

to maintain the status quo.... The approach taken by this Court in the instant case follows that holding. This Court did not make any final determinations regarding the merits of any possible unfair labor practices, but merely transferred the dispute to the Pennsylvania Labor Relations Board to ultimately decide those issues. An injunction was issued to maintain the status quo until those issues were determined.

This Court relied on the principles of Pa. R.C.P. No. 213(f) and, more specifically, the holding of the Commonwealth Court of Pennsylvania in *Smith v. Borough of Castle Shannon,* 163 Pa. Cmwlth. 531, 641 A.2d 671 (1994), in transferring jurisdiction directly to the Pennsylvania Labor Relations Board (PLRB).

Opinion at 10–13.

With respect to the issuance of the preliminary injunction, the common pleas court stated:

It is readily apparent that injunctive relief was necessary to prevent immediate and irreparable harm which could not be compensated for by damages. The School District unilaterally implemented terms and conditions of employment at a time when the Association was conducting a limited lawful strike. Furthermore, these changes preceded the utilization of the arbitration procedures outlined in Act 88.

At a minimum, the actions of unilateral implementation exercised by the School District leave the Association in a frustrated negotiating position. Allowing the School District to act in such a way would immediately and irreparably eliminate any leverage that the Association could maintain throughout the bargaining process.... If the School District could unilaterally dictate the wages and conditions of employment to the

teachers in the first instance, and could thereafter (at any time, and as many times) change, reduce or eliminate wages, benefits or working conditions, what teacher's union would dare to advance any form of a proposition in collective bargaining that might somehow not be well received by their employer? This would, most likely, only lead to further unilateral changes to the detriment of the union.

Furthermore, this Court stated 'that the School District, by unilaterally implementing the terms and conditions of employment (Imposed Agreement) which the Association members are apparently expected to accept, has created a constructive, or *de facto,* lockout.'

. . . .

The second thing that must be shown prior to issuing an injunction is that greater injury will result from refusing the injunction.... The discussion to this point has clearly shown that the abilities of the Association to bargain effectively would be seriously hindered, if not crippled, were this Court not to issue an injunction.

The third necessity is that the injunction restores the parties to the status quo as it existed prior to the alleged wrongful conduct .... the Association members were to return to work on February 22, 2001 under the collective bargaining agreement.

. . . .

Next the alleged wrong must be manifest, and the injunction must be reasonably suited to abate it.... [T]he alleged wrong is the School District's unilateral implementation of terms and conditions of employment.

Finally, this Court finds that the rights of the Plaintiffs are clear, inasmuch as the School District unilaterally implemented terms and conditions of

employment when dispute resolution processes remained under Act 88. The School District argues that the bargaining process reached an impasse, thus allowing it to unilaterally implement the contract provisions while the Association was on strike. Impasse is defined by Act 88 as 'the failure of an employer and an employee organization to reach an agreement in the course of negotiations.' [citation omitted]. However, the Commonwealth Court of Pennsylvania stated that the term impasse, when used in public sector law under PERA, 'can also mean the end of the statutory dispute resolution process, as well as deadlock.'

. . . .

For the School District to assume that it was capable of unilaterally implementing terms and conditions of employment every time contract talks stalled would be contrary to the basic principles of collective bargaining, and would render dispute resolution processes developed by the legislature moot.

Opinion at 18–21.

Finally, the common pleas court concluded:

[I]t is difficult for this Court to conclude that the parties reached an impasse in the instant case. The parties did not utilize arbitration procedures set forth in Act 88, yet the School District unilaterally determined that an impasse or deadlock existed which allowed it to impose terms and conditions on the Association after it commenced a lawful strike.

Opinion at 26.

The District appealed the grant of the preliminary injunction to this Court.

By May 2001, the Association and the District ratified a new collective bargaining agreement, which became effective immediately. The Association moved to dissolve the preliminary injunction and release its bond and asserted that there was no longer any need for the preliminary injunction. The common pleas court granted the motion. The District motioned for reconsideration arguing that the contract settlement did not resolve all outstanding matters. On July 2, 2001, on motion of the parties, the common pleas court vacated its order. The Association reposted its bond.

The Association moved to dismiss the District's appeal of the preliminary injunction as moot. The District opposed the motion.

■ On appeal[4] the District contends: (1) the common pleas court lacked subject matter jurisdiction; (2) the grant of the preliminary injunction was improper because the Association failed to establish a likelihood of irreparable harm and a clear right to relief; (3) the Association came before the common pleas court with "unclean hands" and was not entitled to any form of equitable relief; (4) the common pleas court improperly vacated the automatic supersedeas. We address these issues seriatim.

### Subject Matter Jurisdiction

The District argues that the PLRB has exclusive subject-matter jurisdiction over the claims raised because an unfair labor practice was alleged. The claim that the District unilaterally implemented new terms and conditions of employment sets forth an allegation of an unfair labor prac-

4. Our standard of review on appeal from the grant or denial of a preliminary injunction is the court will not inquire into the merits of the controversy, but instead will examine the record to determine if there were any apparently reasonable grounds for the action of the court below. *James T. O'Hara, Inc. v. Borough of Moosic,* 148 Pa.Cmwlth. 535, 611 A.2d 1332 (1992).

tice and therefore is properly before the PLRB pursuant to Section 1301 of PERA.[5] To the contrary, the Association argues that the District violated Sections 1125–A and 1132–A of the Public School Code and is therefore subject to the equitable jurisdiction of the common pleas court.

■ This Court agrees with the common pleas court that an equity court has jurisdiction to enter a status quo injunction in cases arising out of unfair labor practices where there is a showing of irreparable harm and a clear right to relief.

In *Mazzie v. Commonwealth of Pennsylvania*, 495 Pa. 128, 432 A.2d 985 (1981), our Pennsylvania Supreme Court recognized this exception. "[T]he PLRB has exclusive jurisdiction to determine *whether* an unfair labor practice has occurred. We have, however, never held that the PLRB has exclusive jurisdiction to seek a status quo injunction pending final determination by it as to whether an unfair labor practice has occurred." *Mazzie*, 495 Pa. at 139, 432 A.2d at 991.(emphasis in original). In *Mazzie*, the Pennsylvania Supreme Court upheld this Court's preliminary injunction to prevent the Commonwealth's enforcement of financial disclosure requirements for state employes pending a final determination by the PLRB whether an unfair labor practice had occurred. *Mazzie*, 495 Pa. at 136, 432 A.2d at 989. The Pennsylvania Supreme Court noted:

> Thus, while the court refrained from ruling on petitioners' right to relief on the merits, it determined that petitioners have a clear procedural right to pursue their administrative remedies before being required to comply with the Code's financial disclosure requirements and that, in the meantime, the grant of a

prohibitory preliminary injunction was necessary to preserve petitioners' privacy right claim.

*Mazzie*, 495 Pa. at 136, 432 A.2d at 989.

Herein, the District unilaterally imposed terms and conditions at the precise time when the Association was required to return to work pursuant to Section 11–1125–A. The common pleas court found that this damaged the Union's bargaining power and created a situation which caused irreparable harm if the status quo were not maintained. Here, as in *Mazzie*, the common pleas court refrained from ruling on the merits of the Association's unfair labor claim, but found that damage to the Association's bargaining power once inflicted could not be undone, just as damage to petitioner's privacy rights by the financial disclosure requirements could not be undone in *Mazzie*.

Consequently, the common pleas court issued the injunction that required the parties to work under the terms of the expired collective bargaining agreement until a new agreement was negotiated. The common pleas court transferred the merits of any unfair labor practices to the PLRB for decision. *Smith v. Borough of Castle Shannon*, 163 Pa.Cmwlth. 531, 641 A.2d 671 (1994). As in *Mazzie*, the common pleas court issued the injunction to preserve the status quo while the Association pursued it administrative remedies. *City of Harrisburg v. Capital City Lodge No. 12*, 80 Pa.Cmwlth. 193, 471 A.2d 166, 168 (1984). Our review of the record indicates reasonable grounds existed to support the common pleas court's issuance of the injunction to maintain the status quo.

---

5. Section 1301 provides "the board is empowered ... to prevent any person from engaging in any unfair practice listed in Article XII ... [t]his power shall be exclusive and

shall not be affected by any other means of adjustment or prevention that may have been or may be established by agreement, law, or otherwise." 43 § 1101.1301.

### Likelihood of irreparable harm

The District argues the preliminary injunction should not have been entered because the Association failed to establish either irreparable harm or a clear right of relief. The District contends there was no finding that the teachers faced any harm. Instead, what the common pleas court defined as irreparable harm was a public policy consideration as to when parties to negotiations could unilaterally implement terms and conditions. Any harmful effect of the terms implemented in the Imposed Agreement on the teachers could be remedied by money, therefore there was no irreparable harm.

■ A preliminary injunction will not be issued unless the party seeking the injunction proves:

(1) that relief is necessary to prevent immediate and irreparable harm which cannot be compensated by damages;

(2) that greater injury will occur from refusing the injunction than from granting it;

(3) that the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful conduct;

(4) that the alleged wrong is manifest, and the injunction is reasonably suited to abate it; and

(5) that the plaintiff's right to relief is clear.

*Lewis v. City of Harrisburg*, 158 Pa. Cmwlth. 318, 631 A.2d 807, 810 (1993).

Initially, we note, "it [is] within the sound discretion of the chancellor at the common pleas level to evaluate the significance of the deprivation here. . . ." *City of Harrisburg*, 471 A.2d at 168. The common pleas court found the District's unilateral imposition of terms and conditions of employment at a time when the Association was conducting a limited lawful strike and the Association was required under Act 88 to return to work, frustrated negotiations, hindered the ability of the union to bargain effectively and created great discord.

Our Pennsylvania Supreme Court addressed the limitations on an employer's right to unilaterally implement changes to a collective bargaining agreement after its expiration in *In re Appeal of Cumberland Valley School District*, 483 Pa. 134, 394 A.2d 946 (1978). The Pennsylvania Supreme Court held that unilateral changes in medical insurance benefits after a contract expired and before a new contract was agreed upon violated collective bargaining obligations set forth in Section 701 of PERA, 43 P.S. § 1101.701. "The coercive effect of the unilateral [changes] is obvious. The bargaining authority of the [association] is seriously undermined . . . [g]ood faith collective bargaining would be impossible if the status quo as to the terms and conditions of employment were not maintained while the employes continue to work." *Cumberland School District*, 483 Pa. at 142, 394 A.2d at 951.

Again, in *Pennsylvania Labor Relations Board v. Williamsport Area School District*, 486 Pa. 375, 406 A.2d 329 (1979), our Pennsylvania Supreme Court found that the failure of the school district to process a labor grievance after a collective bargaining agreement had expired was an error. The Pennsylvania Supreme Court noted that to allow unilateral changes from the status quo does not foster labor peace.

To hold that the parties are not bound under such circumstances [no strike in progress and no collective bargaining impasse] to continue the employment relationship under the terms and condi-

tions of employment last agreed upon is to leave a void by saying that there are no terms and conditions which must be followed while the Association members are working. The potential for disruptions in the collective bargaining process would be high indeed.

*Williamsport,* 486 Pa. at 381, 406 A.2d at 332.

Critical to this controversy is that the District's unilateral implementation took place prior to the utilization of the arbitration procedures required by Act 88. Section 1123–A requires the parties to a collective bargaining agreement to bargain upon the issue or acceptance of certain impasse procedures. 24 P.S. § 11–1123–A(a). Section 1125–A(b) provides that if a strike or lockout prevents 180 days of instruction, the parties *shall* submit to final best-offer arbitration. 24 P.S. § 11–1125–A(b). Here, under Act 88, the Association members were required to return to work on February 22 and the District stated that work would be available only under the terms and conditions of the Imposed Agreement. The Imposed Agreement altered the salary structure, changed health benefits and retirement benefits and reserved the right in favor of the District to change any other provision of the Imposed Agreement.

■ The District's actions clearly altered the status quo and disrupted labor peace. The common pleas court reasonably concluded that allowing an employer to unilaterally change the status quo, while the employees were at work and seeking to negotiate a new contract, seriously undermined the Association's bargaining power and constituted irreparable harm.

■ The District also disputes the common pleas court finding that injunctive relief was justified to prevent a violation of Section 1132–A(2). Section 1132–A(2) provides that lockouts are prohibited during final best-offer arbitration. 24 P.S. § 1132–A(2). Here, the Association was required to return to work on February 22 and the parties were required to submit to best-offer arbitration to ensure 180 days of instruction. "The violation of a statute constitutes immediate and irreparable harm and issuing a preliminary injunction to avoid such a violation is justified." *Public Utility Commission v. Israel,* 356 Pa. 400, 406, 52 A.2d 317, 321 (1947).

Here, given the mandatory collective bargaining scheme of Act 88, we find it was reasonable for the common pleas court to conclude that the District's unilateral implementation of terms when the Association was to return to work and prior to the completion of required bargaining resulted in irreparable harm to the Association and justified issuing a preliminary injunction to maintain the status quo and ensure compliance with Act 88.

**Clear Right to Relief**

The District contends that the common pleas court improperly found the Association established a clear right to relief. The District disputes that it created a "de facto lockout [6]" by not providing work under the terms of the expired collective bargaining agreement. The District contends there was no evidence that the District ever engaged in a lockout as defined by Act 88. "Lockout" is defined as "the cessation of furnishing of work to employes or withholding work from employes for the purpose of inducing, influencing, or coercing a change in the conditions or

---

6. The term de facto is defined as "having the effect even though not formally or legally rec-

ognized." BLACK'S LAW DICTIONARY (7th ed.1999).

compensation or the rights, privileges or obligations of employment." 24 P.S. § 11–1101–A. The District argues that it did not cease to furnish work. The record contradicts the District's contention and lends credence to the common pleas court's characterization of the Association's actions as creating a "de facto lockout."[7]

This Court has addressed when it is appropriate for an employer to unilaterally impose its own terms and conditions of employment. In *Philadelphia Housing Authority v. Pennsylvania Labor Relations Board*, 153 Pa.Cmwlth. 20, 620 A.2d 594 (1993), this Court reversed the common pleas court and upheld the PLRB's decision that the Housing Authority was not entitled to unilaterally impose its own terms and conditions of employment on its union employees when a contract had expired, the Housing Authority had made its final offer, negotiations were at an impasse, but the union had not "disrupted the continuation of public service by striking." *Philadelphia Housing*, 620 A.2d at 600.

In *Burrell Education Association v. Burrell School District*, 674 A.2d 348 (Pa. Cmwlth.1996), this Court found that a District could not unilaterally withhold insurance premiums when the Association was not engaged in a work stoppage, there was no impasse and an interim agreement had been signed. *Burrell*, 674 A.2d at 351. In so holding, this Court reviewed our decision in *Philadelphia Housing* and noted:

In Philadelphia Housing Authority, the collective bargaining agreement between the Philadelphia Housing Authority (PHA) and the Union had expired. PHA made a final offer to the Union, which was rejected and negotiations then reached an impasse; however, the Union did not strike. PHA then unilaterally implemented its last offer and reduced the employee's benefits. This Court recognized that although a public employer's economic weapon is a unilateral implementation of its final proposal, such action can only occur where the employees are striking. In so holding, we quoted the Pennsylvania Labor Relations Board, which stated: It would not serve the legislature's declared goal of promoting orderly and constructive relationships between public employers and their employes through good faith collective bargaining to allow a public employer to implement its final offer when the employes have not disrupted the continuation of public service by striking. Unilateral action by an employer during a period of no contract while employes continue to work serves to polarize the process and would encourage strikes by employes who otherwise may wish to continue working under the terms of the expired agreement while negotiations continue.

---

**7.** Counsel for the Association questioning the District:

Q: Dr. Hasson, if the teachers present themselves at work tomorrow ready to work under the terms of the expired contract, what position will the administration take concerning their ability to return to work?

A: The administration has always taken the stand that the teachers are welcome back at any time. We are looking forward to having them back tomorrow.

Q: Under what terms and conditions will they be permitted back into the building?

A: The terms and conditions are those under the resolution.

Q: So the District will not honor the terms and conditions of the expired contract absent some intervention by someone else?

A: That's correct.

Notes of Testimony, February 21, 2001 at 35; R.R. at 239a.

*Burrell,* 674 A.2d at 351, quoting *Philadelphia Housing Authority* 620 A.2d at 600.

The District relies on *Philadelphia Housing Authority* and argues that it justifiably imposed unilateral terms and conditions because the Association was on strike. The District contends that a public employer may not unilaterally implement terms so long as the employees stay on the job. It is only the union's decision to strike that triggers the employer's right to unilaterally implement terms. Thus, if a union wants to maintain pressure on the employer to continue negotiations and recognition of the preexisting terms and conditions of employment, it need only defer from striking.

The common pleas court made a crucial, reasonable and legally correct determination that the facts in the instant controversy distinguish it from *Philadelphia Housing Authority.*[8]

▪ In *Philadelphia Housing Authority,* the collective bargaining rights conferred by PERA were under scrutiny, while here Act 88 of the Public School Code was involved. Under Act 88, an impasse[9] is not the end of negotiations but the start of the next phase of bargaining. Each impasse triggers statutory procedures that require intervention by a third party.[10] Strikes and lockouts are part of

the process and Act 88 sets specific limitations on any strike or lockout that would threaten 180 days of school instruction. Accordingly, the statutory procedures must continue until an agreement is reached. In this instance, under the Public School Code, when the District unilaterally imposed its own terms and conditions, the parties were not at an impasse and bargaining had not ceased.

Therefore, the District's action violated the Public School Code and common pleas court reasonably found the parties were not at impasse and that the Association demonstrated a clear right to relief.

### Unclean Hands

▪ Next, the District argues that the Association came before the common pleas court with unclean hands because the Association considered a work stoppage if the District insisted on implementing the terms and conditions of the Imposed Agreement. Here, the record adequately supports the common pleas court's finding that this was simply a consideration by the Association and does not justify a finding that the Association had "unclean hands." Additionally, the District insisted that the only terms and conditions the teachers could return to work under were those of the Imposed Agreement.

---

8. The common pleas court notes, "the Commonwealth Court was concerned with the exhaustion of procedures under PERA" in Philadelphia Housing Authority and here, "this Court must consider whether all of the collective bargaining procedures under Act 88 have been exhausted." Opinion at 24.

9. The term "impasse" is defined as "the failure of an employer and an employe organization to reach an agreement in the course of negotiations." 24 P.S. § 11–1101–A.

10. Section 1121 A(a) provides if an impasse exists after a reasonable period of bargaining, the parties may voluntarily submit to media-

tion. 24 P.S. § 11–1121 A(a). The parties must submit to mediation if there is no agreement after 45 days of bargaining but no later than 126 days prior to the end of the school's fiscal year. *Id.* Section 1123 A(a) provides the parties must bargain which of three impasse procedures to use in arbitration. 24 P.S. § 11–1123 A(a). Strikes or lockouts are considered part of the impasse resolution process. Mandated nonbinding final best arbitration cannot be reached except when a strike by public school employees threatens the provision of 180 days of instruction. 24 P.S. § 11–1121–A.

## Automatic Supersedeas

The District contends that the common pleas court improperly vacated the automatic supersedeas mandated by Pa.R.A.P. 1736(b) which provides that the taking of an appeal by a political subdivision acts as an automatic supersedeas. The common pleas court was well aware and so stated, that an appeal of the preliminary injunction was a certainty and it vacated the automatic supersedeas so that the issuance of the preliminary injunction would not be rendered moot. This Court concurs with the common pleas court that if the appeal of the District had acted as a supersedeas any intervention of the court would have been an empty gesture.

■ Based on the foregoing, this Court affirms the common pleas court's issuance of the preliminary injunction.[11]

### *ORDER*

AND NOW, this 27th day of November, 2001, the order of the Court of Common Pleas of Dauphin County in the above-captioned matter is affirmed and the motion to dismiss the appeal in the above-captioned matter is denied.

---

11. The Association asserts that we should dismiss the District's appeal because the parties have ratified a successor agreement. This Court denies that motion. We find this case falls within the exception to mootness in that the "conduct complained of is capable of repetition yet likely to evade review." *Sierra Club v. Pennsylvania Public Utility Commission*, 702 A.2d 1131, 1134 (Pa.Cmwlth.1997).