68 A.3d 323

**CITY OF PHILADELPHIA, Petitioner**

v.

**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, DISTRICT 33, Respondent.**

**No. 27 EM 2013.**

Supreme Court of Pennsylvania.

June 7, 2013.

## *ORDER*

PER CURIAM.

**AND NOW,** this 7th day of June, 2013, the Motion for Leave to File Brief of *Amici Curiae* in Support of the

Petitioner City of Philadelphia and the Motion for Leave to File a Reply Memorandum are **GRANTED,** and the Application for Extraordinary Relief is **DENIED.**

Chief Justice CASTILLE files a Dissenting Statement.

## *DISSENTING STATEMENT*

Chief Justice CASTILLE.

The Court has declined to grant the City's Application for Extraordinary Relief. For the reasons that follow, I dissent.

This case involves a protracted labor dispute with respect to non-professional, non-uniformed civil service employees of the City of Philadelphia ("City"). In April of 2008, the City and the American Federation of State, County and Municipal Employees, AFL–CIO, District 33 ("District Council 33") entered into negotiations for a successor agreement to a collective bargaining agreement that was due to expire on June 30, 2008. The parties were able to reach an agreement. On July 24, 2008, the parties signed a memorandum of agreement ("2008 MOA") which covered the period from July 1, 2008 through June 30, 2009. There has been no agreement in the nearly four years since then.

The parties first met on April 30, 2009 to negotiate a successor agreement to the 2008 MOA. This negotiation was unsuccessful. Following that negotiation session, the parties have met to negotiate on more than a dozen occasions over more than four years of bargaining; they have not come to an agreement. On January 16, 2013, the City presented what it deemed its final offer ("the Final Offer") to District Council 33. This Final Offer proposed wage increases: a 2.5% increase that was to take effect shortly after ratification and another 2% effective January 1, 2014. The Final Offer also proposed that employee contributions to the pension fund for existing employees should be increased so the employee contributions would be no less than 50% of the normal cost of the plan. The Final Offer also proposed placing new employees in a different pension plan, which limited the City's contribution

to no more than 1.5% of a new employee's eligible compensation. District Council 33 rejected the Final Offer, and presented a counteroffer.

On February 4, 2013, the City filed a complaint in the Court of Common Pleas of Philadelphia County, seeking declaratory and equitable relief. *See City of Philadelphia v. American Federation of State, County and Municipal Employees, AFL–CIO, District Council 33,* Case ID No. 130200040. The City asserted that the parties have bargained to impasse as more than a reasonable amount of time had passed in negotiations and the parties have not come to agreement.

In its complaint, the City asserted that effective negotiations were stymied by the decision of the Commonwealth Court in *Philadelphia Housing Authority v. PLRB,* 153 Pa. Cmwlth. 20, 620 A.2d 594 (1993) (*"PHA "*). In its filing in our Court, as well as its complaint in the trial court, the City refers to the *PHA* court's decision as a "holding." *See, e.g.,* Petition for Extraordinary Relief at 16; Complaint at ¶ 163. District Council 33's answer in our Court also refers to the *PHA* decision as a holding. *See, e.g.,* Answer at 4. This is consistent with lower court references. *See, e.g., Burrell Educ. Ass'n v. Burrell School Dist.,* 674 A.2d 348, 350 (Pa. Cmwlth.1996); *Central Dauphin Educ. Ass'n v. Central Dauphin School Dist.,* 60 Pa. D. & C.4th 300, *319 (CCP of Dauphin County 2001). What the parties do not realize is that *PHA* was a plurality decision. *PHA* was decided by a seven-judge panel. Two judges dissented; two concurred in the result only. Thus, *PHA* did not establish binding precedent for the Commonwealth Court or the lower courts. *See Commonwealth v. Bethea,* 574 Pa. 100, 828 A.2d 1066, 1073 (2003).

In any event, the City asserted that per *PHA,* when a public-sector employment negotiation that is covered under the Public Employe Relations Act ("PERA"), *see* 43 P.S. § 1101.101 *et seq.,* is at an impasse, the public employer may not unilaterally impose contract terms unless the public employees first strike. The City asserted that *PHA* essentially allows District Council 33 to hold the City to the terms of the expired agreement in perpetuity. The City claimed that this

standstill has had a deleterious effect on its finances and ability to plan for the future.

On February 5, 2013, the City filed the instant Application for Extraordinary Relief in this Court, setting forth the above background information, and requesting that we exercise our extraordinary jurisdiction and take this case immediately. It asserts that the *PHA* decision is flawed in that it improperly shifted the balance of power sharply in favor of unions, allowing unions to decide unilaterally whether to freeze the parties' duties and rights in time. The City reasons that if a union believes that a previous collective bargaining agreement is more advantageous than anything the union could achieve through present-day good faith bargaining, *PHA* improperly allows the union to retain those advantages, even if the financial landscape of the municipality has radically shifted.

District Council 33 counters by arguing, *inter alia,* that the parties are not in fact at an impasse, and thus *PHA* is not at issue. Additionally, it asserts that *PHA* properly strikes a balance between employers and employees in the public sector. It contends that if the *PHA* rule were discarded, and the City were allowed to impose unilaterally its Final Offer, it is likely that a strike—and the concomitant significant disruption that would negatively affect public interests—would ensue. District Council 33 asserts that continued adherence to the *PHA* rule encourages the parties to resolve their differences through peaceful collective bargaining.

I would grant this Application. An effective four-year stalemate in contract negotiations between a major employees' union and a municipality, turning in crucial part upon a plurality decision establishing a rule this Court has never passed upon, presents a legal issue of obvious importance. The *PHA* three-judge plurality concluded that even where an impasse has occurred, a public employer cannot engage in unilateral action unless its employees had actually elected to go on strike. The City makes a colorable claim that this interpretation fosters a state of stalemate, which is ultimately disadvantageous to both sides in municipal labor negotiations.

It is notable that this predictable difficulty was anticipated by the Honorable James G. Colins in his dissent in *PHA*. Judge Colins explained that the plurality's decision in *PHA:*

> compels municipal corporations or authorities to continue to operate indefinitely under expired labor agreements regardless of the financial impossibility of doing so. To compel any municipality to maintain financial commitments in perpetuity in the face of a declining population or a shrinking tax base or any other adverse circumstance, creates a precedent in this Commonwealth which is most dangerous and is contrary to the public interest.

*PHA*, 620 A.2d at 601–02 (Colins, J., dissenting, joined by Kelly, J.). Judge Colins presciently stated that the plurality's decision "threaten[ed] the delicate balance of bargaining power between employer and employee in the public sector." *Id.* at 602.

Twenty years ago, the Pennsylvania Supreme Court opted not to review the Commonwealth Court's *PHA* plurality decision. *See Pennsylvania Labor Relations Board v. Philadelphia Housing Authority*, 536 Pa. 634, 637 A.2d 294 (1993) (denying allocatur). No current member of the Court was sitting on the Court then. Although the issue could have been reviewed by the Court at that time, it should not be ignored now. The issue of the propriety of the *PHA* plurality is an important one, not simply to this particular dispute in Philadelphia, but also to public sector labor matters across our Commonwealth. This is particularly so in the current economic circumstances. Although it is true that the case could slowly percolate through the court system, and that the Commonwealth Court could consider the *PHA* non-majority decision anew, it is apparent that this Court will ultimately need to weigh in on this issue. In my view, it is prudent to do so now rather than forestall review, as if this were just another case. Neither a public employer nor its employees should have to negotiate under the existing uncertainty regarding this Court's ultimate resolution of the purely legal *PHA* issue.

I believe that this Court should exercise its extraordinary jurisdiction over this important, purely legal issue. Accordingly, I respectfully dissent.